TOTAL PROPERTY SERVICES OF NEW ENGLAND, INC. *v.* Q.S.C.V., INC., ET AL. (11026)

FOTI, LAVERY and LANDAU, Js.

Argued October 28, 1992—decision released March 9, 1993

*George A. Silvestri III,* with whom, on the brief, was *Stephen B. Delaney,* for the appellant (defendant Bergeron/Sheehan/Therrien General Real Estate Partnership).

*Dana M. Gilland,* with whom, on the brief, was *George M. Purtill,* for the appellee (plaintiff).

LAVERY, J. The defendant real estate partnership (partnership)[1] appeals from the trial court's judgment confirming an arbitration award to the plaintiff. On appeal, the partnership claims (1) that the trial court improperly denied the partnership a hearing on the issue of whether it was bound by the arbitration agreement, despite the fact that it was not a signatory to the agreement, (2) that there was no valid arbitration agreement on which the arbitrator could obtain subject matter jurisdiction, (3) that the failure of the arbitrator to render the award within thirty days of the close of the arbitration hearing nullified that award so that it should not have been confirmed by the trial court, (4) that the plaintiff's failure to obtain a certificate of authority to transact business in Connecticut deprived the trial court of subject matter jurisdiction to hear the application to confirm, and (5) that the partnership was not properly served with notice of the arbitration hearing. We conclude that the partnership was entitled to a hearing to determine (1) whether it was bound by the arbitration agreement, (2) whether the

---

[1] The original named defendants in this case were Q.S.C.V., Inc., doing business as Dunkin' Donuts, and Bergeron/Sheehan/Therrien General Real Estate Partnership. This appeal was brought by only the defendant Bergeron/Sheehan/Therrien General Real Estate Partnership. The plaintiff alleges that Q.S.C.V., Inc., is an agent of the real estate partnership.

arbitrator had subject matter jurisdiction, and (3) whether the partnership received proper notice, and we therefore reverse the judgment of the trial court and remand the case for a new trial.

The trial court could reasonably have found the following facts. In September of 1988, the defendant Q.S.C.V., Inc., and the plaintiff Total Property Services of New England, Inc. (Total Property), entered into a contract for the construction by the plaintiff of a Dunkin' Donuts store in Portland. The contract designates Q.S.C.V., Inc., as the "owner" and Total Property as the "contractor." Disputes arose between the parties regarding the plaintiff's alleged failure to pay subcontractors, and Q.S.C.V.'s alleged failure to pay the plaintiff. On April 24, 1991, the plaintiff made a demand for arbitration. One month later, the American Arbitration Association attempted to notify the partnership that the plaintiff on May 20 had amended the demand for arbitration to include the partnership as a respondent. Neither the partnership nor Q.S.C.V. responded to the notice. An arbitration hearing was held on June 10, 1991, at the offices of the American Arbitration Association in Massachusetts. Neither defendant attended the hearing. On June 19, the arbitration proceedings were declared closed; on July 17, the arbitrator entered an award in favor of the plaintiff for $165,118 plus costs against only Q.S.C.V., Inc., which was in bankruptcy on that date.[2] The award was amended on August 13, making the partnership jointly liable. The arbitration award was confirmed only as to Q.S.C.V., Inc., on November 18, 1991, because the partnership had filed an objection to confirmation. On January 6, 1992, the trial court rendered its judgment confirming the arbitration award against the partnership.

---

[2] Q.S.C.V., Inc., filed a chapter 11 bankruptcy petition on December 11, 1990. The petition was dismissed on January 2, 1992.

The following procedural history is relevant to the disposition of this appeal. On January 6, 1992, counsel for the partnership and for the plaintiff appeared before the trial court. The plaintiff sought to clarify its name for the record, since different combinations of letters had been used during the proceedings to refer to "Total Property Services of New England, Inc." An employee of the plaintiff testified as to the company's name and initials to clarify the issue for the record. At the same hearing, counsel for the partnership presented a motion claiming (1) that the real estate partnership was not a signatory to the contract, (2) that an improper submission was made to the arbitrator because of conflicting provisions in the agreement relating to arbitration and litigation, (3) that the partnership did not receive proper notice of the arbitration hearing, and (4) that Total Property Services of New England, Inc., and Total Property Services, Inc., were two separate corporations, thus making the identity of the plaintiff unclear.

The fourth issue was heard first, since it was also raised by the plaintiff, and, as we have noted, an employee of the plaintiff testified concerning the identity of that company. Counsel for the partnership then cross-examined the employee, the plaintiff's vice president, James T. Lawson. Counsel asked Lawson to read two sections of the contract in question. The sections conflicted. The first section, § 10.8 of the construction contract between Q.S.C.V., Inc., and the plaintiff, stated: "All claims or disputes between the Contractor and the Owner arising out or relating to the Contract, or the breach thereof, shall be decided by arbitration . . . ." The second section, § 21, which was added or typed in, stated: "All disputes arising out of this contract shall be interpreted under the Commonwealth of Massachusetts with a court in the State of

Massachusetts as governing body." The following exchange occurred after Lawson finished reading the second section.

"Mr. Delaney [Counsel for the partnership]: . . . Did there come a time subsequently to the signing of this contract, Mr. Lawson, that a dispute arose between Q.S.C.V. and yourself?

"Mr. Purtill [Plaintiff's Counsel]: Objection, Your Honor. Number one, this is beyond the scope of my examination. Number two, he's starting to get into—we can't relitigate the arbitration.

"The Court: I agree. I'm not going to relitigate this." Following redirect and recross-examination of witness Lawson, this exchange occurred.

"The Court: Okay, that takes care of that issue. I find that the two corporations are one and the same.

"Mr. Purtill: Your Honor, I'm sorry, it's our application to confirm. It's the defendant who raised the objection and has the burden on those items.

"The Court: All right, he's got the burden.

"Mr. Purtill: I thought Your Honor disposed, although did not rule, but took care of item—his objections one and two, and that was item number four. I assume that item three is something that Mr. Delaney is going to cover.

"Mr. Delaney: I would like to go over the notice, Your Honor.

"The Court: Well, one and two, what happened, your client was sued and he didn't appear for the arbitration, is that correct?

"Mr. Delaney: Your Honor—

"The Court: So items one and two could have been brought up at the arbitration, is that correct?

"Mr. Delaney: Could they have been raised?

"The Court: If they had been there?

"Mr. Delaney: That's correct, they could have been raised.

"The Court: All right, so let's take three."

The partnership then offered evidence to prove that it did not receive adequate notice of the arbitration demand and hearing. After testimony of the general partner of the partnership, and cross-examination of him by counsel for the plaintiff, the court determined that the partnership was given adequate notice, and confirmed the arbitration award in a ruling from the bench.

The partnership argues on appeal that the court improperly ruled that it was not entitled to a hearing on the first two issues presented by its January 6, 1992 motion because those issues should have been raised in arbitration. We agree with the partnership.

Arbitration is "the voluntary submission . . . of an existing or future dispute to a disinterested person or persons for final determination . . . ." (Citation omitted; internal quotation marks omitted.) *Harry Skolnick & Sons* v. *Heyman,* 7 Conn. App. 175, 179, 508 A.2d 64, cert. denied, 200 Conn. 803, 510 A.2d 191 (1986). " 'Arbitration affords a contractual remedy with a view toward expediting disputes.' " *Dagniella* v. *Foremost Ins. Co.,* 197 Conn. 26, 33, 495 A.2d 709 (1985). Because arbitration is a matter of contract, "no one may be compelled to arbitrate a dispute outside the scope of the agreement, which constitutes the charter of the entire arbitration proceeding and defines and limits the issues to be decided by the arbitrators." *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 122, 318 A.2d 84 (1972). Arbitration is favored by the courts because " 'it is intended to avoid the formalities, delay, expense and

vexation of ordinary litigation.' " *Dagniella* v. *Foremost Ins. Co.*, supra, 33–34. The autonomy of voluntary submission to arbitration requires a minimum of judicial intrusion. *AFSCME* v. *New Britain,* 206 Conn. 465, 469, 538 A.2d 1022 (1988). In furtherance of these principles, our courts recognize a waiver rule, which provides that if a party does not object to the arbitrability of a dispute before the arbitrator, the objection to arbitrability is deemed waived. *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 62, 357 A.2d 466 (1975). On the basis of the exchange between the trial court and counsel for the partnership quoted earlier, it appears that the trial court applied the waiver rule in the present case. The court ruled that since the issues of whether the partnership was a party to the contract and whether the agreement was valid were not raised before the arbitrator, they could not be raised in the trial court. Because in this case the partnership raised issues about the existence of a contract to arbitrate, and not about the arbitrability of a dispute, the application of the waiver rule was misplaced.

We turn first to the issue of whether the partnership, which was not a signatory to the contract, was required to raise the issue of its status as a nonsignatory before the arbitrator. In claiming that it was not a signatory to the contract, the partnership asserts that it is not bound by the terms and conditions of the agreement. This issue is similar to the question raised before this court in *Wesleyan University* v. *Rissil Construction Associates, Inc.,* 1 Conn. App. 351, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). In that case, Wesleyan University agreed to arbitrate with a construction company all claims arising out of, or relating to, a construction contract between them. A subcontractor, who had entered into a contract with the construction company, sought arbitration to resolve claims directed against Wesleyan that had arisen from

the subcontract. The subcontractor claimed that the construction company was an agent of Wesleyan. Wesleyan sought to enjoin the subcontractor from seeking arbitration.

We noted in *Wesleyan* that "arbitration agreements are to be strictly construed and such agreements should not be extended by implication"; id., 355; and that Wesleyan had never contracted with Rissil. We held that "[p]ersons thus cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves." Id.

The issue of whether a nonsignatory to an agreement to arbitrate can be compelled to arbitrate has been considered in several instances by the United States Court of Appeals for the Second Circuit. In deciding these cases, the court has turned for guidance to the Federal Arbitration Act, 9 U.S.C. §§ 1 through 15. In *Fisser* v. *International Bank,* 282 F.2d 231, 233 (2d Cir. 1960), the court wrote: "It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. For the Act contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures." In deciding two later cases, *A/S Custodia* v. *Lessin International, Inc.,* 503 F.2d 318 (2d Cir. 1974), and *McAllister Bros., Inc.* v. *A & S Transportation Co.,* 621 F.2d 519 (2d Cir. 1980), the court, after citing the rule in *Fisser,* ruled on the issue regarding nonsignatories by reference to § 4 of the Federal Arbitration Act. That section, which we note concerns an action to compel arbitration, provides that "[i]f the mak-

ing of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof."

There is no provision in the General Statutes, under the section concerning applications for orders to proceed with arbitration or the section dealing with applications to confirm arbitration awards, that coincides exactly with the language we quoted from § 4 of the Federal Arbitration Act. General Statutes § 52-408,[3] however, which concerns agreements to arbitrate generally, provides that an arbitration agreement shall be "valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." A party's claim that it is not a signatory to a contract and therefore not bound by the agreement is clearly "sufficient cause . . . for the avoidance of contracts generally." The policy embodied in both the state and federal statutes we have cited is applicable to the facts of this case. The plaintiff in this action sought and obtained arbitration of a dispute. The record before us reflects that the partnership was not a signatory to the contract. The partnership claimed at trial that it did not receive proper notice of the arbitration. The plaintiff applied for confirmation of the arbitration award. The partnership was denied a hearing in the trial court to determine if in fact it was a party to the contract with the plaintiff. If the partnership is not permitted a hearing on the

___

[3] General Statutes § 52-408 provides: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

issue of whether it was a party to the arbitration agreement, we would run the risk of affirming the confirmation of an arbitration award against a party that did not agree to arbitration. Such a result would be untenable, and defy both fairness and logic.

The plaintiff has asserted that the judgment of the trial court should be affirmed because although the partnership is not a signatory to the agreement, the signatory, Q.S.C.V., is an agent of the partnership. The principal-agent status between the partnership and Q.S.C.V. was never proven at trial.

"The question of the existence or nonexistence of an agency relationship is ordinarily one of fact to be determined by the trier of fact." *McLaughlin* v. *Chicken Delight, Inc.*, 164 Conn. 317, 323, 321 A.2d 456 (1973). This principle applies to the court's role as the trier of fact in arbitration proceedings. In *Wesleyan University* v. *Rissil Construction Associates, Inc.*, supra, as we have noted, the defendant subcontractor sought to bring Wesleyan into arbitration by alleging that the general contractor was an agent of Wesleyan. We concluded that the trial court improperly determined that the general contractor was an agent of Wesleyan, not because the trial court could not rule on agency, but because the facts and circumstances did not support its finding. Id., 354.

The United States Court of Appeals for the Second Circuit takes a similar approach, requiring the district court, as the trier of fact in arbitration proceedings, to apply ordinary contract and agency principles to determine who is bound by the arbitration provisions of a contract. See *McAllister Bros., Inc.* v. *A & S Transportation Co.*, supra (whether affiliates or subsidiaries bound by agreement signed by principal); *A/S Custodia* v. *Lessin International, Inc.*, supra (whether broker is agent of principal in context of charter party);

*Fisser* v. *International Bank,* supra (whether bank must proceed to arbitration as "alter ego" of signatory corporation). In the present case, to support its claim that Q.S.C.V. is the agent of the partnership, the plaintiff points to a document it had admitted into evidence during a hearing on notice. The trial court allowed the partnership a brief hearing on its claim that it did not receive proper notice of the arbitration hearing. At issue was the partnership's address on certain dates. The partnership put on one witness, a general partner. That witness was cross-examined by counsel for the plaintiff. During cross-examination, the plaintiff admitted into evidence a copy of a complaint that the partnership filed in Superior Court against the plaintiff. At issue was the address used by the partnership. The complaint stated that "on or about September 29, 1988, the Plaintiff, through its agent, servant or employee, [Q.S.C.V.], Inc., a corporation organized and existing under the laws of the State of Connecticut, entered into a written contract with the Defendant, Total Property Service of New England, Inc., as a general contractor, whereby the Defendant agreed to construct a building on the premises previously described in Schedule 'A.' " On appeal, the plaintiff directs our attention to this document to show that Q.S.C.V. is an agent of the partnership, and that the partnership is therefore a party to the agreement to arbitrate. As we noted above, there was no hearing on the issue of whether the partnership was a party. The complaint was entered into evidence on the issue of notice. Since there was no hearing on agency or whether the partnership was a party, the trial court never decided this issue. As an appellate tribunal, we choose not to rule on an issue that was not heard by the trial court, and about which the trial court, in fact, refused a hearing.

The partnership's second claim is that there was no valid arbitration agreement on which the arbitrator could obtain subject matter jurisdiction. The trial court declined to hold a hearing on this issue when it was raised by the partnership in its objection to the confirmation of the arbitration award because the court said the issue should have been raised before the arbitrator. We agree with the partnership that the validity of the agreement could be raised in the trial court.

The partnership claims that the agreement to arbitrate was invalid because it contains conflicting provisions, one of which is contained in a typed-in, added clause. The agreement in question is a standard American Institute of Architects document number 107. Article 10.8 of the document states that "[a]ll claims or disputes between the Contractor and the Owner arising out or relating to the Contract or the breach thereof, shall be decided by arbitration . . . ." The typewritten, presumably added, Article 21 states: "All disputes arising out of this contract shall be interpreted under the Commonwealth of Massachusetts with a court in the State of Massachusetts as governing body."

" '[W]here there is a printed form of contract, and other words are inserted [in the printed form], in writing or otherwise, it is to be assumed that they take precedence over the printed matter." *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 612, 577 A.2d 709 (1990) (change of wording from "may" to "shall"). In the present case, the arbitration agreement contains terms that conflict with each other absolutely. This conflict brings into question subject matter jurisdiction, and therefore the authority of the arbitrator to hear the dispute. "The authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgment. *International Brotherhood of Teamsters* v. *Shapiro* [138 Conn. 57, 65, 82 A.2d 345 (1951)]; *Textile Workers*

*Union* v. *Uncas Printing & Finishing Co.*, 20 Conn. Sup. 91, 96, 125 A.2d 236 (1956)." *Bennett* v. *Meader,* 208 Conn. 352, 364, 545 A.2d 553 (1988). Therefore, the partnership's challenge to the authority of the arbitrator, although brought after the award, was not waived and was, in fact, timely.

The partnership next makes two claims not raised in the trial court that it asks us to review under the plain error provisions of Practice Book § 4185.[4] Those claims are that the arbitrator failed to render an award within thirty days of the close of the hearing as required under General Statutes § 52-416 (a)[5] thus nullifying the award, and that the plaintiff, because it does not have authority to transact business in Connecticut, is statutorily prohibited from maintaining any action, suit, or proceeding in any court in this state under General Statutes §§ 33-412 (a)[6] and 33-396 (a).[7] We decline to

[4] Practice Book § 4185 provides in part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[5] General Statutes § 52-416 (a) provides: "If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing."

[6] General Statutes § 33-412 (a) provides: "No foreign corporation transacting business in this state in violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority. Nor shall any action, suit or proceeding be maintained in any court in this state by any successor or assignee of such corporation on any right, claim or demand, arising out of the transaction of business by such corporation in this state, until a certificate of authority has been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets."

[7] General Statutes § 33-396 (a) provides: "No foreign corporation except an insurance or surety or indemnity company shall transact business in this

review these claims. "Nothing in the case gives rise to any manifest injustice amounting to plain error under all the circumstances. . . . The doctrine of plain error should be invoked sparingly. To hold otherwise would undermine the requirement that claims of law be raised in the trial court in the first instance." (Citation omitted; internal quotation marks omitted.) *Small v. South Norwalk Savings Bank,* 205 Conn. 751, 760, 535 A.2d 1292 (1988).

The final claim of the partnership is that the trial court incorrectly determined that the plaintiff provided the partnership with adequate notice of the arbitration proceeding. Although the trial court did not permit a hearing on whether the partnership was a signatory to the contract or on whether the agreement was valid despite conflicting provisions, it did permit a brief hearing on the issue of notice. The partnership put on one witness, Thomas McHugh, a general partner. McHugh testified that he did not receive notice of the arbitration hearing or the award. He said that the first correspondence he received regarding the arbitration was the notice of the application to confirm the arbitration award. During cross-examination, McHugh testified that the proper address for the real estate partnership, at the time of the arbitration hearing, was 101 Oak Street, Hartford. When counsel asked McHugh if the partnership ever used the address 40 Stanford Drive, McHugh replied, "Not in three years." Counsel for the plaintiff then offered into evidence the complaint we discussed previously, dated May 10, 1990, which stated that the partnership's address on that date, a year before the arbitration proceedings began, was 40 Stanford Drive, Farmington. The court asked to examine

---

state until it has procured a certificate of authority to do so from the secretary of state, and no insurance, surety or indemnity company shall transact business in this state until it has procured a license from the insurance commissioner in accordance with the provisions of § 38a-41."

the document, ended the proceedings, and rendered judgment for the plaintiffs orally from the bench.

The brief, cursory hearing, cut off by the court's rendering judgment, was insufficient under the circumstances. As we have determined, the partnership was improperly denied a hearing on the two threshold issues of whether as a nonsignatory to the agreement it could be bound, and whether the dispute was properly before an arbitrator. For this case to have been properly resolved, a full hearing on the merits of the partnership's objection to the confirmation application was in order. Our careful review of the transcript reveals that this did not occur.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.