[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this action is GEO International Corporation (GEO), a Delaware corporation whose principal office is in Stamford. GEO provides testing and related services for the oil and gas industries.[1] The plaintiff seeks both, monetary and punitive damages from the defendant, Security Pacific Business Credit, Inc. (Sec Pac), of Lombard, Illinois, also a Delaware corporation and a subsidiary of Financial Services Systems (FSS), of San Diego, California. Plaintiff claims that it had an agreement to borrow approximately $45,000,000 from Sec Pac, a loan to be secured by real estate and other assets, in order to fund GEO's purchase of Advance Process Supply Company, Inc. (Advance), of Chicago, a screen printing company. Other purposes of the loan were to provide GEO with working capital and enable it to retire outstanding debt.
The terms of the loan, according to plaintiff, were embodied in a letter dated September 9, 1986 from M. W. McGath, a vice president and division manager of Sec Pac, to the plaintiff's vice president of finance, W. J. Garry, which enclosed a document entitled "Proposed Term Sheet." GEO signed this document and first paid $150,000 and then another $50,000 as deposits. Plaintiff claims that on December 23, 1986, the defendant reneged on its commitment to make this loan. CT Page 4953
The first count of the four count complaint alleges breach of contract based on oral Sec Pac's letter of September 9, 1986, including the "Proposed Term Sheet," and on oral commitments. The second count claims promissory estoppel based on the contention that the defendant "induced" GEO to believe it would receive a loan, and GEO relied on defendant's promises. The third count alleges negligent misrepresentation and reliance, and the fourth asserts a violation of General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
The defendant Sec Pac filed an answer generally denying the allegations of the complaint, but conceded that it had received $200,000 from GEO and that GEO had signed the September 9, 1986 letter from defendant to plaintiff enclosing the "Proposed Term Sheet." In addition, the defendant filed two "affirmative defenses," the first claiming that the complaint "fails to state a claim upon which relief may be granted" and the second that plaintiff failed to mitigate damages.[2]
Defendant has moved for summary judgment (#140), claiming that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. Practice Book 384. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81,595 A.2d 334 (1991). For the reasons stated hereinafter, defendant's motion for summary judgment is granted in part and denied in part.
The criteria for the granting of a summary judgment were also set forth by the Appellate Court in Cummings Lockwood v. Gray,26 Conn. App. 293, 296-297, 600 A.2d 1040 (1991): (1) such a judgment may be granted if there is no genuine issue as to any material fact; (2) a material fact is one that will make a difference in the outcome of the case; (3) the moving party has the burden of proving the nonexistence of any material fact; (4) the evidence must be viewed in the light most favorable to the nonmovant; and (5) the test is whether the moving party would be entitled to a directed verdict on the same facts. Thus, our task in deciding this motion is not to evaluate the merits of a particular issue, but only to decide whether there exists any genuine issue of material fact. CT Page 4954
In support of its motion for summary judgment, the defendant Sec Pac has submitted affidavits of its attorneys which incorporate excerpts from depositions of several officers of both the plaintiff and the defendant. These excerpts make the following points: (1) a great deal of negotiation ensued between plaintiff and defendant with respect to this proposed loan; (2) several of Sec Pac's officers expressed enthusiasm about a loan to GEO; (3) the parties understood that final approval of the loan would have to come from FSS, the defendant's parent corporation in San Diego; and (4) doubts about the value of the proposed collateral and GEO's overall financial health resulted in a decision by Sec Pac not to make the loan at issue.
The defendant claims that these excerpts from the depositions clearly indicate that no outstanding issues of material fact exist, and that judgment should enter in its favor as a matter of law. Defendant contends as to the first count, breach of contract, that there was no final approval of the loan, and therefore that no enforceable contract came into existence. The record includes deposition testimony by Martin Kelly, Sec Pac's president and chief executive officer, that he advised plaintiff that he personally did not have the authority to approve a loan of the amount contemplated.
Sec Pac also asserts that the Statute of Frauds, General Statutes 52-550 (a)(4) and (5), prohibits enforcement of the oral contract asserted by plaintiff because the proposed loan was to be secured in part by an interest in land, and also because it was not to be performed within one year of its making. The defendant further contends that several of its officers in its branch offices in New York City and Chicago, who are alleged to have told the plaintiff that the loan was approved, had neither actual nor apparent authority to bind the company, and formal and final approval by the parent corporation's home office was necessary.
As to the second and third counts claiming promissory estoppel and negligent misrepresentations, defendant claims that it was unreasonable for plaintiff to rely on alleged promises by its employees in the branch offices and, as experienced businessmen, plaintiff's officers should have realized that approval of the loan by the parent corporation in San Diego was required. Defendant also contends that CUTPA does not apply to banks, at least when they are engaged in commercial, as contrasted with consumer, transactions. CT Page 4955
Wadia Enterprises, Inc. v. Hirschfeld, 27 Conn. App. 162,166, 604 A.2d 1339 (1992), summarizes the obligations of the nonmovant: (1) "the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Id., 166; (2) "[m]ere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." Id., 170; (3) "[i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." Id., 168-69; and (4) "[m]ere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." Id., 169. (Internal citations and quotation marks omitted; emphasis in original.)
In response to defendant's motion for summary judgment, the plaintiff GEO filed affidavits by three of its officers, Garry, W. P. Costantini and J. E. McConnaughy, Jr., which contend that: (1) they were advised by McGath of Sec Pac that FSS, the defendant's parent corporation in San Diego, would "rubber stamp" the loan application if the local Sec Pac offices in New York City and Chicago approved, and that such approval by the home office was not a "condition precedent" for the loan; (2) Sec Pac's officers, McGath and Kelly, indicated that they were authorized to approve GEO's loan application; and (3) in May, 1987, some six months after the defendant declined to make the loan in question, GEO received the funds it needed from E. F. Hutton, but that the delay damaged the plaintiff as the cost of acquiring Advance had increased in the meantime. The plaintiff also submitted the affidavit of its New York counsel, Steven Wolowitz, who was admitted pro hac vice in this state, which includes excerpts from deposition testimony of a number of officers of both plaintiff and defendant, including a claim that Kelly told representatives of the plaintiff that the loan approval "was a done deal."
Plaintiff claims that a fact issue exists as to whether Kelly and McGath had actual or apparent authority to bind Sec Pac. Plaintiff argues that it was consistently advised that Kelly, as chief executive officer of Sec Pac, had the authority to commit CT Page 4956 the defendant to make the loan in question, and that San Diego's approval was merely a "rubber stamp. " GEO further contends that the second and third counts, promissory estoppel and negligent misrepresentation, also present genuine issues of material fact because they both involve a disagreement whether GEO's reliance on Kelly's authority to approve the loan was reasonable or not. In addition, the plaintiff argues that the question whether defendant engaged in "unfair or deceptive acts or practices" presents factual issues that cannot be resolved by way of a summary judgment. General Statutes 42-110b(a).
In analyzing the defendant's motion, one starts with the proposition that "[the] party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitled him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Fogarty v. Rashaw, 193 Conn. 442, 445, 476 A.2d 582 (1984). See also Bassin v. Stamford, 26 Conn. App. 534, 537, 602 A.2d 1044 (1992), to the same effect. In addition, "[b]ecause the burden is on the movant, the evidence must be viewed in the light most favorable to the nonmovant and he is given the benefit of all favorable inferences that can be drawn." Catz v. Rubenstein, 201 Conn. 39, 49,513 A.2d 98 (1986).
The affidavits and supporting documents filed by the parties indicate that, despite the caveats expressed in Fogarty and Catz, summary judgment is appropriate as to the first count claiming breach of contract because no genuine issues of material fact remain unresolved. Although this case has been extensively and expertly briefed by both parties, the fact is that defendant never made a written and unconditional commitment to loan money to GEO. The defendant's September 9, 1986 proposal was very explicit that it was just that, a proposal and not a commitment. The letter said, "This is not a commitment to provide financing, but rather a proposal based on our knowledge of the transaction." The letter went on to say that the deposit would be returned to GEO "if for any reason [plaintiff] declines to make any . . . loans." The letter describes itself as an "expression of interest" and says that thereafter the parties would "work diligently in order to permit completion of [defendant's] field visits, collateral audits and legal documentation." This promised investigation resulted in a decision by defendant not to make a CT Page 4957 loan to GEO. Moreover, the attachment to the letter, which outlined terms, was itself labeled "Proposed Term Sheet" and added in bold type that "This Is Not A Commitment To Lend." The term sheet contained a section entitled "conditions precedent" which referred, among other things, to "[n]egotiation, execution and delivery of a mutually satisfactory Financing Agreement and related documentation."
Since in my view the agreement to make the loan in issue was contingent on a satisfactory investigation of the credit worthiness of GEO and the advisability of this investment on the part of Sec Pac, it is not necessary to analyze Sec Pac's defense of the Statute of Frauds in any depth. However, it does appear that the alleged loan agreement is not within the statute because the loan, although described as for three years, could have been prepaid by GEO within a year, albeit with a penalty. Jacobs v. Thomas, 26 Conn. App. 305. 312, 600 Conn. App. 1378, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992) ("the provision covers only those contracts whose performance cannot possibly be completed within a year"). Therefore, General Statutes 52-550(a)(5) is not applicable. As to subsection (a)(4) of the statute, although a mortgage clearly is a conveyance of an interest in land, only a small portion of the loan was to be secured by real estate, and accordingly this section would not, I believe, be applicable to this transaction.
To sum up, plaintiff claims a breach by the defendant of a contract to make a loan, but the written proposal by Sec Pac did not represent a commitment by defendant to make this loan. The proposal contained several contingencies and the parties never entered into an unconditional, final and binding agreement, and hence summary judgment is appropriate.
As to the second count claiming reliance on representations by certain officers of the defendant, GEO has alleged that the defendant promised it would make a loan to plaintiff by the end of 1986, a time when it could acquire Advance at an advantageous price, and that GEO reasonably relied on that promise to its detriment because it did not pursue other borrowing possibilities prior to the end of that year. Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699, 590 A.2d 957 (1991), summarizes the law of promissory estoppel or detrimental reliance in these words: "any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another CT Page 4958 party to believe that certain facts exist and to act on that belief; and the other party change its position in reliance on those facts, thereby incurring some injury . . . It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to an estoppel . . . and whether that burden has been satisfied in a particular case is an issue of fact." (Citations and internal quotation marks omitted.)
Garry's affidavit on behalf of GEO states that at no time did "Kelly ever say that he lacked in any way authority to approve the loan to GEO. Nor did McGath . . . I or anyone else ever say that Kelly's approval was subject to any condition of any kind." The affidavits of Costantini and McConnaughy repeat the same point. "Kelly never stated . . . that he did not have the authority to approve the GEO loan." All three substantive affidavits submitted by the plaintiff in opposition to the motion b Sec Pac for summary judgment claim that Kelly had final authority to approve the GEO loan and that Kelly said it was a "done deal."
In opposing summary judgment, the plaintiff claims there are factual issues concerning whether Kelly did make the statement attributed to him that the loan "was a done deal," which he denies, and whether he had authority to give final approval for the loan. One person's word against another's is not what the summary judgment mechanism was created to decide. Moreover, there is an issue as to the status of Kelly or McGath as "agents" of the defendant corporation and whether they were authorized or not to approve the loan. Summary judgment is inappropriate in this situation because of the axiom that: "[t]he question of the existence or nonexistence of an agency relationship is ordinarily one of fact to be determined by the trier of fact." Total Property Services of New England, Inc. v. Q.S.C.V., Inc.,30 Conn. App. 580, 589, 621 A.2d 316 (1993).
The elements of negligent misrepresentation, as alleged in the third count, were summarized in D'Ulisse-Cupo v. Board of Education, 202 Conn. 206, 218, 520 A.2d 217 (1987), by quoting the Restatement of Torts, as follows: "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." In the third count, GEO again CT Page 4959 asserts as it did in the second count that Sec Pac promised and represented that it would make a loan to plaintiff in 1986, that this representation was false, and that GEO relied on this promise by not seeking alternate methods of financing in that year. The parties again are at issue as to the extent of Kelly's and McGath's authority to bind Sec Pac and exactly what representations were made, including the oft-quoted remark attributed to Kelly that the loan was a "done deal."
The defendant is faced in this third count with the axiom that negligence cases are not amenable to resolution by summary judgment, as they involve mixed questions of law and fact. Michaud v. Gurney, 168 Conn. 431, 434, 362 A.2d 857 (1975) ("[t]he conclusion of negligence is necessarily one of fact . . . Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the usual manner").
Regarding CUTPA, there is clearly a split of authority in the Superior Court concerning its applicability to the banking and related industries. Even assuming that CUTPA will be deemed applicable to banks in general, I believe this statute will not be applied to banks and similar institutions like Sec Pac engaged in commercial loans, as contrasted with consumer transactions. This clearly was a commercial loan between experienced business persons representing large corporations.[3]
Sec Pac's motion for summary judgment is granted as to counts one and four of the complaint and is denied as to counts two and three for the reasons stated.
So Ordered.
Dated at Stamford, Connecticut, this 20th day of May, 1993.
William B. Lewis, Judge