[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 11327
This is the plaintiff Total Concept/New York Inc.'s ("T.C.I.") application for an order confirming an arbitration award. Defendant A.I.G. Financial Products Corp. ("A.I.G.") has moved to vacate the award on the grounds that it violates public policy.
On October 4, 1994, the court ordered the parties to submit supplemental memoranda of law addressing five questions. The first was "What effect, if any, does the arbitrator's award (ruling) of November 12, 1992 have upon the issues to be decided in this case?" On that date, the arbitrator ruled that the contract between the parties was valid and enforceable. The arbitrator made this ruling after a preliminary hearing at which A.I.G. claimed the contract was void for illegality and for violation of public policy because it required T.C.I. to practice architecture without a license. A.I.G.'s supplemental memorandum prepared in response to the October 4, 1994 order focused extensively on the effect of the November 12 ruling. In light of this, the court must determine whether as a threshold matter it must decide the validity of the parties' contract in addition to undertaking public policy review of the arbitrator's award.
Prior to its supplemental memorandum, A.I.G.'s principal argument had been that the arbitrator's award is illegal and against public policy because it necessitates the payment of fees to a non architect for the performance of architectural services. A.I.G. has also argued, pursuant to C.G.S. § 52-408, that the parties' agreement to arbitrate is invalid because it is contained in a contract that is illegal and against public policy. Consequently, A.I.G. argues, the arbitrator never had subject matter jurisdiction over the parties' dispute and therefore could not properly render an award. A.I.G. seeks to accomplish the same goal under either theory, viz: A.I.G. wants the court to make its own determination as to whether T.C.I.'s services under the contract constituted the "practice of architecture." Making this determination in the process of arbitral review is strictly circumscribed by the scope of public policy review. See, e.g., Board of Trustees for State TechnicalColleges v. Federation of Technical College Teachers, 179 Conn. 184
(1979); Stratford v. Local 134 IFPTE, 201 Conn. 577 (1986). However, under C.G.S. § 52-408, A.I.G. has the right to a judicial determination of the validity of the agreement to arbitrate. CT Page 11328International Brotherhood of Teamsters v. Shapiro, 138 Conn. 57
(1951); Kilby v. St. Paul Insurance Co., 29 Conn. Sup. 22
(1970); Textile Workers Union v. Uncas Printing and FinishingCo., 20 Conn. Sup. 91 (1956).
C.G.S. § 52-408 provides in pertinent part:
 An agreement in any written contract . . . to settle by arbitration any controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.
Further, since the parties' agreement to arbitrate is the sole source of the arbitrator's authority, the validity of that agreement is an issue of subject matter, jurisdiction.International Brotherhood of Teamsters v. Shapiro, supra; Bennettv. Meader, 208 Conn. 352 (1988); Total Property Services of NewEngland, Inc. v. Q.S.C.V. Inc., 30 Conn. App. 580 (1993). As a subject matter jurisdictional issue, the arbitrator's authority may be challenged at any time prior to a final judgment by the court. Id. "And even a judgment of confirmation is open to collateral attack on a jurisdictional ground which would be similarly available for a collateral attack on any other judgment." Textile Workers Union v, [v.] Uncas Printing and FinishingCo., supra at 96.
A.I.G. has challenged the subject matter jurisdiction of the arbitrator under § 52-408. Even if it hadn't, the court may raise the issue, sua sponte, Concerned Citizens of Sterling v.Sterling, 204 Conn. 551, 557 (1987). Beginning at the preliminary hearing which lead to the November 12, 1992 ruling, A.I.G. argued that the parties' agreement "was illegal, void, unenforceable, and ineffectual in conferring jurisdiction to the arbitrator." A.I.G.'s argument at the preliminary hearing was predicated specifically on § 52-408.
In letters dated November 20, 1992 and December 10, 1992, A.I.G. maintained that the arbitrator did not have jurisdiction over the claim. During the formal arbitration hearings, A.I.G. again contended that the parties' agreement is void and, "therefore, no enforceable written agreement to arbitrate exists end as a result . . . the American Arbitration Association lacks CT Page 11329 jurisdiction to adjudicate this matter."
Most importantly, in the present action, A.I.G. has specifically alleged that the "arbitration award is a nullity because the arbitrator lacked jurisdiction to adjudicate the matter because the submission to arbitrate is void and illegal and properly avoided by application of Conn. Gen. Stat. Sec. 52-408." At page 3 of its supplemental memorandum, A.I.G. points out that it "has renewed its Conn. Gen. Stat. Sec. 52-408 . . . challenge to the submission to arbitrate" in the present action. "The basis of the C.G.S. 52-408 challenge is the claim that the submission to arbitrate is avoidable at law because it is embodied within a non-severable contract which is inherently illegal."
Since A.I.G. is challenge the agreement to arbitrate pursuant to § 52-408 under the foregoing cases A.I.G. is entitled to a judicial determination of the validity of its contract with T.C.I. before any arbitral review takes place. Although the arbitrator appears to have addressed this issue in his November 12, 1992 ruling, neither A.I.G. nor the court is bound by this ruling. Although the arbitrator's legal and factual conclusions are ordinarily binding, the arbitrator does not have authority to determine the validity of the agreement to arbitrate. When the arbitrator undertakes "to pass upon this question" it goes "beyond its authority". International Brotherhood of Teamsters v.Shapiro, supra at 63. As previously stated, since the validity of the underlying agreement is an issue of subject matter jurisdiction, it may be raised at any time, Therefore, the question is properly and seasonably before the court on A.I.G.'s motion to vacate the award.
Since, under § 52-408, it is the exclusive province of the court to determine the validity of the contract, the court is not constrained by the restrictions applicable where the court is reviewing an award. Under § 52-408, the court is merely deciding a question of law.
It is not, however, appropriate for this particular court to decide this question at this juncture. The court takes judicial notice of a civil action pending in the Judicial District of Fairfield entitled A.I.G. Financial Products Corp. v, [v.] TotalConcept/New York, Inc., CV92 0300111 S, in which A.I.G. is seeking a declaratory judgment that its contract with T.C.I. is void and unenforceable for the same reasons alleged in the CT Page 11330 present action. The pleadings are closed in that action and it was claimed to the courtside trial list on December 1, 1993.
Since that action remains pending, this court should stay the present proceedings pending its resolution. If the court declares the agreement to be illegal and unenforceable then this court will be deprived of subject matter jurisdiction. If the court rules to the contrary, then this court may then proceed to confirm or vacate the award. Accordingly, the court declines to either confirm or vacate the award but orders a stay of this action pending resolution of the declaratory judgment action.
MOTTOLESE, J.