**Marilyn CAREY, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA Corporation, and Lincoln National Life Insurance Company, Defendants.**

Civ. No. 3:99CV96(AVC).

United States District Court,
D. Connecticut.

July 27, 1999.

Peter Burgoyne Prestley, Madsen & Prestley, Hartford, CT, for Marilyn Y. Carey, plaintiffs.

Vaughan Finn, Shipman & Goodwin, Hartford, CT, Christine L. Ciarrocchi, CIGNA Corporation, Corporate Law Dept., James B. Herman, Cigna Corporation, Affairs Division, Philadelphia, PA, Albert Zakarian, Victoria Woodin Chavey, Day, Berry & Howard, Hartford, CT, Connecticut General Life Ins Co., CIGNA Corporation, Lincoln National Life Ins Co., defendants.

**RULING ON THE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY JUDICIAL PROCEEDINGS**

COVELLO, Chief Judge.

This is an action for damages and injunctive relief in which the plaintiff, Marilyn Carey, alleges that the defendants, Connecticut General Life Insurance Company ("CGLIC"), CIGNA Corporation ("CIGNA"), and Lincoln National Life Insurance Company ("Lincoln National"), engaged in a pattern and practice of discriminatory conduct towards her because she is an African–American. The complaint purports to allege a cause of action for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b), a violation of the Thirteenth Amendment to the United States Constitu-

tion, and a common law cause of action for intentional infliction of emotional distress.

The defendants, CGLIC and CIGNA, now move, pursuant to the Federal Arbitration Act,[1] 9 U.S.C. § 1 et seq.,[2] to compel arbitration and stay judicial proceedings.

The issue presented is whether the parties agreed to submit to arbitration the dispute that is the subject of this suit.

For the reasons hereinafter recited, the court concludes that the parties did agree to submit their dispute to arbitration. The defendants' motion to compel arbitration and stay judicial proceedings is therefore granted insofar as it seeks to compel arbitration and denied insofar as it seeks to stay judicial proceedings. The court orders the case dismissed.

## FACTS

Examination of the complaint and the supporting material filed concerning the within motion discloses the following.

1. The defendants' motion purports to be brought pursuant to Fed.R.Civ.P. 12(b). The court is aware of no language in Rule 12(b) concerning a motion to compel or to stay the judicial proceedings. However, since the court finds that the motion is properly brought under the Federal Arbitration Act, it will be addressed as though it had been brought pursuant to the same.

2. The Federal Arbitration Act provides, in relevant part
   [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ... upon being satisfied that the issue involved ... is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3.
   [U]pon being satisfied that the making of the agreement for arbitration ... is not at issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4.

3. The employment at will doctrine provides that, absent express agreement to the con-

In June 1980, CIGNA hired Carey as an underwriter. Until December 1998, she continued in the employ of CIGNA, serving in various personnel positions. From February 1995, through December 1997, Carey served as director, human resources, in the CIGNA individual insurance division ("the IID"). She was at all relevant times an at-will employee[3] of the company, in that there was never a formal, written contract of employment between CIGNA and herself.[4]

The job description for director, human resources, under the heading "major duties and responsibilities," says that the director is to "[e]nsure[ ] that [c]orporate and [d]ivision programs (e.g., ... [d]ispute resolution ...) are implemented and working effectively."

On July 25, 1995, one Donald Levinson, executive vice president of human resources, sent an interoffice memo to all CIGNA employees informing them that the company "ha[d] decided to incorporate [mediation/arbitration] as the final step in

trary, either employee or employer may terminate their relationship at any time, for any reason. Such employment relationship is one which has no specific duration, and may be terminated for or without cause. *See* Black's Law Dictionary 525 (6th ed.1990).

4. CIGNA defined its relationship with Carey by means of an employee handbook. Carey acknowledged receipt of this handbook in January, 1990. It provides, in relevant part:

   This handbook provides information about policies and programs that relate to you in your work and about benefits for which you may be eligible. *The handbook is for information only. It is not an employment contract* ... CIGNA reserves the right to change any or all ... policies, programs, and benefit plans in whole or in part at any time, with or without notice to you ... *[n]othing in this handbook and nothing at any time communicated to you about your rights as an employee regardless of the source, limit in any way your right to resign from your employment with CIGNA at any time for any reason or your employer's right to terminate your employment at any time for any reason.*

the [e]mployment [d]ispute [r]esolution [p]rogram for all divisions, effective immediately."

On October 1, 1996, one Nancy Wackerman, assistant vice president of human resources, sent a copy of the arbitration policy to all human resources employees, including Carey.[5]

On April 28, 1998, Carey executed a form entitled "employment dispute arbitration request form," on which she indicated that she wished to request mediation before engaging in binding arbitration. Carey does not dispute that her request dealt with the matters that are the subject of this suit.

On May 11, 1998, one Carolyn Olshan, CIGNA's ADR program administrator, sent a letter to Carey indicating that CIGNA had determined that mediation would not be helpful and that her claim would proceed directly to arbitration.

From June 1, 1998 until July 29, 1998, Carey's attorney and counsel for CIGNA worked with a member of the American Arbitration Association ("AAA") to select a mutually agreeable arbitrator to hear Carey's case.

On July 29, 1998, the AAA informed the parties that an arbitrator had been appointed and requested that Carey and CIGNA indicate their availability in August and September to schedule the arbitration hearing.

On August 6, 1998, Carey's attorney informed CIGNA and the AAA that "Ms. Carey [would be] pursuing her claims through another forum."

On January 1, 1999, Carey and the rest of the employees of the IID were transferred to Lincoln National. The transfer resulted from the sale of the IID to Lincoln National, a transaction in which CIGNA's employees were considered "a significant part of the assets transferred."

Carey found her new position at Lincoln to be unsuitable and thereafter terminated her employment with Lincoln and obtained a position elsewhere.

On January 19, 1999, Carey filed the within complaint.

On March 3, 1999, the defendants, CIGNA and CGLIC filed the within motion to compel arbitration and stay judicial proceedings.

5. The CIGNA individual insurance division employment dispute arbitration policy provides in relevant part:

A. Statement of Policy

In the interest of fairly and quickly resolving employment-related disagreements and problems, and applying the important public policies expressed in the [FAA], CIGNA ... policy is that *arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements* and problems not resolved by ... internal dispute resolution processes. Both [CIGNA] and the employee will be bound by any decision made by a neutral arbitrator. If the employee or [CIGNA] do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but *arbitration must be used before going to court.* This policy is intended to prevent an employee from going to court over employment-related disputes, it is not intended to take away any other rights. As part of the arbitration process, an employee may request that the dispute be submitted to voluntary mediation before it is submitted to arbitration. If CIGNA agrees that mediation might resolve the dispute, a mediation will be conducted.
...

B. Scope of the arbitration procedure

This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991 ... and any other federal, state, or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment. *This policy is intended to substitute final and binding arbitration, which is quick, inexpensive and fair, for going to court, which is slow and expensive* (emphasis added).

## STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), written agreements providing for arbitration of employment disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must stay proceedings if it is satisfied that the parties have agreed in writing to arbitrate an issue underlying the district court's proceedings. *See WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997).

A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those causes of action to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the causes of action in the case are arbitrable, it must decide whether to stay the balance of the proceedings pending arbitration. *See Oldroyd v. Elmira Savings Bank, F.S.B.*, 134 F.3d 72, 75–76 (2d Cir.1998). *See also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987).

## DISCUSSION

CGLIC and CIGNA first argue that Carey is obligated to complete the arbitration process before bringing an action in court. Specifically, CGLIC and CIGNA argue that Carey's continued employment with CIGNA after the company implemented a mediation/arbitration program constituted acceptance of an implied contract that disputes would be determined in arbitration. Further, CGLIC and CIGNA argue that even if Carey's continued employment is not enough to establish that such a contract existed, her voluntary initiation of the process concerning the same events as the within cause of action did create such a contract.

Carey responds that she never consented to binding arbitration. Specifically, she argues that there was no meeting of the minds between herself and CIGNA to submit the subject matter of the within action to binding arbitration.

In *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997), the second circuit stated: "[t]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute."

Further, "[w]hen the contract contains a broad arbitration clause ... that purports 'to refer all disputes arising out of a contract to arbitration,' the strong presumption in favor of arbitrability applies with even greater force." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991) (*quoting McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir.1988)).

In addition, "[i]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature. Further, while the [FAA] requires a writing, it does not require that the writing be signed by the parties." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987).

"It does not follow ... that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. For the Act contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures." *Total Property Services of New England, Inc. v. Q.S.C.V.*, Inc., 30 Conn.App. 580, 587, 621 A.2d 316 (1993) (*quoting Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)).

It is axiomatic that "[a]lthough a party is bound only where it has agreed to arbitrate, an *agreement may be implied* from the party's conduct." *Gvozdenovic v. United Air Lines,* Inc., 933 F.2d 1100, 1105 (2d Cir.1991) (emphasis added).

The arbitration agreement here is precisely the sort of "broad agreement to arbitrate" contemplated by the second circuit. What remains to be addressed is whether the parties to this litigation had an agreement to submit the dispute to binding arbitration.

Carey relies upon the holding in *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 662 A.2d 89 (1995) for the proposition that in order for the arbitration policy to have modified the preexisting terms of her employment, she needed affirmatively to consent to the new terms. This reliance is misplaced. In *Torosyan,* the court considered whether an employer could unilaterally change the provisions of a written employment contract specifying termination only for cause to an at-will arrangement. *Torosyan* did not address the modification of an employment arrangement exclusively within an at-will context. Here, Carey does not dispute that she was at all relevant times an at-will employee of CIGNA. Whether Carey's continued employment after CIGNA's adoption of the arbitration policy, without more, is sufficient acceptance of the new terms is unclear.

■ However, Carey's *conduct* manifested a clear intent to be bound by CIGNA's employment terms as modified. Her affirmative actions furnish the factual predicate that establishes her intent to be bound by the arbitration provision. The parties have documented Carey's active and voluntary participation in the process; for example, she continued her employment with CIGNA for more than three years following the adoption of the policy; she was an employee in the human resources department (the department charged with implementing the mediation/arbitration policy); she filled out and submitted a form entitled "employment dispute arbitration request"; she retained an attorney to correspond with CIGNA's representatives, to schedule and conduct an arbitration hearing; and, Carey reached agreement with CIGNA as to the arbitrator to hear the case.

■ Only after all this had occurred did Carey decide to withdraw from the arbitration proceeding and file the within action. Carey cannot now assert that there was no "meeting of the minds" as to the submission of the within dispute to binding arbitration when she herself initiated a process with which she was, it appears, eminently familiar. Indeed, parties who voluntarily submit to arbitration can be deemed to have waived any objection that they were not under an agreement to arbitrate. *See Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3d Cir.1985).

### CONCLUSION

For the foregoing reasons, the defendants' motion to compel arbitration and stay judicial proceedings [Document No. 5] is GRANTED insofar as it seeks to compel arbitration. The court orders the case dismissed.* It is so ordered this 27th day of July, 1999, at Hartford, Connecticut.

---

* The case is dismissed without prejudice.