## L. DOUGLAS SHRADER *v.* ZELDES, NEEDLE AND COOPER

## ZELDES, NEEDLE AND COOPER *v.* L. DOUGLAS SHRADER

| Superior Court | Judicial District of | File Nos. CV960337701S |
|---|---|---|
| | Fairfield at Bridgeport | CV960338355S |

Memorandum filed May 19, 1997

*Beverly S. Knapp,* for the plaintiff in the first case and for the defendant in the second case.

*Joseph D. Garrison* and *Michele Lang Palter,* for the defendant in the first case and for the plaintiff in the second case.

STEVENS, J. These consolidated actions arise from arbitration proceedings between the law firm of Zeldes, Needle and Cooper (firm), and a former shareholder of the firm, L. Douglas Shrader. In docket number CV960338355S, the firm has filed an application to vacate part of the award and Shrader has filed an application to correct and to confirm the award.

In docket number CV960337701S, the action instituted by Shrader, the firm has filed an answer containing a counterclaim and a special defense. Pending before the court is Shrader's motion to dismiss this counterclaim and to strike the special defense. The firm's counterclaim and special defense concern a provision of the

employment agreement between the firm and Shrader that restricts Shrader's legal practice upon the termination of his employment with the firm. The arbitrators concluded that this restriction on Shrader's practice was void and unenforceable under rule 5.6 (a) of the Rules of Professional Conduct. The firm's counterclaim and special defense attack this part of the arbitration decision. The firm insists that the arbitrators' decision is wrong and violates the public policy expressed by rule 5.6 (a), which authorizes noncompetition provisions that are part of a retirement agreement.

In his motions, Shrader argues that the firm's defenses are time barred under General Statutes § 52-420 (b) which provides that "[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." The firm's counterclaim and special defense were not filed within this thirty day time limit.[1]

Shrader correctly states that under § 52-420 (b), claims seeking to modify or to correct an arbitration award must be made within thirty days from the notice of the award. Thus, Shrader argues that since the firm's public policy defenses could have been raised through a timely motion to vacate and were not, they should now be barred because they are being asserted in an effort to circumvent the thirty day time limitation and to avoid confirmation of the award.

The firm's primary response to Shrader's argument is that its special defense and counterclaim asserting

---

[1] The firm filed its own application to vacate the arbitration decision, but in this application, the firm failed to allege that the decision should be vacated because the arbitrators wrongly voided the noncompetition agreement. The firm filed a motion to amend its application to assert this claim. In its motion to amend, the firm did not raise the public policy claim now being asserted to support its counterclaim and special defense, and the motion to amend was denied for reasons unrelated to the public policy issue.

public policy violations are not governed by the arbitration statute, but are based on common law. The firm argues that the court has plenary power independent of § 52-420 to review arbitration awards that violate a clear public policy. See generally *Garrity* v. *McCaskey*, 223 Conn. 1, 612 A.2d 712 (1992). The firm contends that the arbitrators' decision violates the public policy embodied in rule 5.6 (a) of the Rules of Professional Conduct which authorizes attorneys to have noncompetition clauses in agreements concerning retirement benefits.[2] Additionally, the firm believes that this public policy implicates the court's plenary power to regulate the conduct of lawyers.

Shrader does not argue that as a matter of law the firm has failed to assert a valid public policy claim; he simply insists that irrespective of whether the arbitration decision violates public policy, any such claim must be raised within the thirty day time limitation period of § 52-420 (b). More specifically, Shrader argues that since the arbitration statutes essentially supplant common-law rules regarding arbitration; see *Bennett* v. *Meader*, 208 Conn. 352, 545 A.2d 553 (1988); the assertion of all common-law claims, including those based on public policy, must be made within the requirements of the statute. Consequently, under these circumstances and on the procedural posture of the present case, the court must assume as true the factual allegations asserted in the special defense and counterclaim. See *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983) (motion to dismiss not seeking introduction of facts admits all well pleaded facts); *Kilbride* v. *Dushkin Publishing Group, Inc.*, 186 Conn. 718, 719, 443 A.2d

---

[2] Rule 5.6 of the Rules of Professional Conduct provides in pertinent part: "A lawyer shall not participate in offering or making:

"(a) A partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement . . . ."

922 (1982) (motion to strike admits facts of contested pleading).

Thus, the precise issue presented is whether a party may assert as a special defense or a counterclaim that an arbitration decision should not be confirmed because the award violates public policy, when this claim could have been, but was not asserted as part of a timely motion to vacate or to correct the award under § 52-420 (b). The parties have not cited any case on point and this issue appears to be one of first impression.

Our Supreme Court has expressly recognized three grounds for vacating an arbitration award: "(1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 6. "[T]he public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's [award] is limited to situations where the [award] . . . would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 340, 555 A.2d 406 (1989). When an arbitrator makes an error of law, however, or where an award "manifests an egregious or patently irrational application of the law [that] award . . . should be set aside pursuant to § 52-418 (a) (4) . . . ." *Garrity* v. *McCaskey*, supra, 10.

Consequently, under *Garrity*, the law is clear that the public policy exception is a separate, common-law basis for contesting an arbitration award independent of the provisions of the arbitration statutes. *Garrity*, however, does not address exactly when or how this

public policy exception may be asserted. After careful consideration, this court concludes that courts are required to review claims that an arbitration decision should not be confirmed because the award violates public policy even when these claims are not asserted within the thirty day time limitation period of § 52-420 (b).

As a matter of judicial prudence and in the exercise of the court's inherent judicial discretion, the court should not confirm an arbitration decision that violates well established public policy. An arbitration decision that violates public policy is not just erroneous; such an award exceeds the powers of an arbitrator and is " 'void and unenforceable.' " *International Brotherhood of Police Officers* v. *Windsor*, 40 Conn. Sup. 145, 148, 483 A.2d 626 (1984). Even if the decision conforms to the submission, a court must vacate the award if it is repugnant to the public policy of this state. *Watertown Police Union Local 541* v. *Watertown*, supra, 210 Conn. 339; *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 639–40, 608 A.2d 718 (1992). "Just as parties cannot expect a court to enforce a contract between them that is illegal or otherwise contrary to public policy, they cannot expect any arbitration award which condones illegal payment or contravenes public policy to receive judicial endorsement. . . . In such a case, the reviewing court is not concerned with the correctness of the arbitrator's decision, but with the lawfulness of enforcing the award." (Citations omitted.) *State* v. *R.A. Civitello Co.*, 6 Conn. App. 438, 442, 505 A.2d 1277, cert. denied, 199 Conn. 810, 508 A.2d 770 (1986).

The court appreciates the policy favoring arbitration as a means of settling private disputes. Courts generally undertake limited judicial review of arbitration decisions in order to promote this policy and to minimize the interference "with an efficient and economical system of alternative dispute resolution." *Garrity* v.

*McCaskey*, supra, 223 Conn. 4–5. Furthermore, "[t]he public policy exception applies only when the award is clearly illegal or violative of a strong public policy." Id., 7. "The party challenging an arbitration award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 417, 544 A.2d 186 (1988). Additionally, the court must make "every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." (Internal quotation marks omitted.) Id.

The issue here, however, is not whether the public policy argument is meritorious, but whether a prima facie claim that the award violates public policy may be asserted in defense to an application to confirm the award. In this context, it has been held that once a public policy concern is raised, the court must address it. *Union Pacific R. Co.* v. *United Transportation Union*, 794 F. Sup. 891, 894 (D. Neb.), aff'd in part and rev'd in part, 3 F.3d 255 (8th Cir), cert. denied, 510 U.S. 1072, 114 S. Ct. 881, 127 L. Ed. 2d 76 (1992).

The law is established that "if a motion to vacate, modify or correct is not made within the thirty day time limit specified in General Statutes § 52-420, the award may not thereafter be attacked on any of the grounds specified in [General Statutes] §§ 52-418 and 52-419." *Amalgamated Transit Union Local 1588* v. *Laidlaw Transit, Inc.*, 33 Conn. App. 1, 4, 632 A.2d 713 (1993). *Garrity*, however, has explained that public policy claims do not expressly arise from the provisions of §§ 52-418 or 52-419. *Garrity* v. *McCaskey*, supra, 223 Conn. 6. "[T]he power to strike an arbitration ruling as violative of public policy [exists] apart from any particular grant of authority from the legislative branch." Id.

Moreover, although the general rule is that when a party has grounds to contest an arbitration award, but

136

fails to do so within the statutory time period, it is precluded from raising the challenge in an action to confirm the award; see generally 4 Am. Jur. 2d 282–83, Alternative Dispute Resolution § 253 (1995); certain defenses, such as the existence of fraud or the lack of arbitral jurisdiction, may nevertheless be asserted as defenses to confirmation under such circumstances. See, e.g., *Carr* v. *Trotta*, 7 Conn. App. 272, 274–75, 508 A.2d 799, cert. denied, 200 Conn. 806, 512 A.2d 229 (1986) (failure to file motion to vacate arbitration decision did not preclude defendant from contesting jurisdictional basis of award in action to confirm decision). This court holds that a prima facie claim that an arbitration award violates fundamental public policy must be viewed as being among these exceptions.

For the foregoing reasons, therefore, Shrader's motion to dismiss the counterclaim and his motion to strike the special defense are hereby denied. As requested, Shrader is given leave to file a further memorandum on the standard of review and on the merits of the public policy claim within three weeks.