M.J. DALY & SONS, INC. *v.* CITY OF WEST HAVEN
(AC 20542)

Lavery, C. J., and Landau and Dranginis, Js.

Argued June 12—officially released October 2, 2001

*William J. Egan*, with whom was *Barbara E. Crowley*, for the appellant-appellee (defendant).

*John B. Farley*, with whom were *Robert M. Barrack* and, on the brief, *Dennis C. Cavanaugh*, for the appellee-appellant (plaintiff).

*Opinion*

LANDAU, J. The defendant, the city of West Haven (city), appeals and the plaintiff, M.J. Daly & Sons, Inc. (Daly), cross appeals from the judgment rendered in favor of Daly, after a trial to the court, in this action sounding in contract and tort. On appeal, the city claims that the court improperly (1) concluded that Daly was not required to submit its claims to the project engineer, (2) concluded that Daly's claims were not barred by

the defense of accord and satisfaction, (3) reached conclusions not supported by the facts and (4) failed to grant the city's motion to dismiss for lack of subject matter jurisdiction. On cross appeal, Daly claims that the court improperly applied the clear and convincing standard of proof to its tort claims. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the claims raised on the appeal and cross appeal. The city accepted Daly's bid to make improvements to the city's sewage disposal system. The contract called for completion of the improvements by March 31, 1993. Pursuant to the terms of the contract, the project engineer was the interpreter of the requirements of the contract and the arbiter of disputes that arose under the contract. In the event of the termination of the project engineer, the contract provided that the city "shall appoint an engineer against whom [Daly] makes no reasonable objection, whose status under the Contract Documents shall be that of the former [engineer]." At the time the parties entered into the contract, the project engineer was the firm of Cascio Bechir.

Problems with the project developed almost immediately. Daly discovered an underground structure that was not shown on the plans and which delayed the initial excavating. Later, Daly discovered that the force main pipe running from the pumping station to the water pollution control plant was made of asbestos cement and, therefore, a parallel force main pipe needed to be installed. Work on the project stopped while the city's engineers prepared the plans and specifications for the construction of the new force main pipe. Furthermore, an existing pump failed, requiring Daly to perform emergency bypass pumping.

On January 20, 1995, the city terminated Cascio Bechir as the project engineer. The city then purported

to appoint the engineering firm of Black & Veatch as the successor project engineer on March 24, 1995. At no time did the city seek Daly's consent for the appointment of Black & Veatch as project engineer. On January 31, 1996, Daly brought an action alleging that the city failed to compensate Daly for change orders to the contract. On June 13, 1996, the city elected to terminate the contract with Daly prior to the completion of the project.

Daly set out its action against the city in a six count complaint. The first count alleged that the city breached the contract by failing to compensate Daly for delay caused by the city and for change orders to the contract. The second count claimed damages for expenses incurred by Daly for home office expenses and overhead. The third count claimed a lack of good faith in the handling of Daly's claims under the contract. The fourth count alleged that the city was negligent in its failure to provide Daly with accurate plans for the project. The fifth count alleged negligent misrepresentations and omissions by the city regarding payment for change orders to the contract. The sixth count alleged that the city misrepresented its willingness to compensate Daly for the emergency bypass pumping. In response to Daly's complaint, the city pleaded several special defenses, alleging, inter alia, that Daly's claims were barred by accord and satisfaction and by Daly's failure to submit its claims to the project manager for resolution. The city also counterclaimed, alleging that Black & Veatch, as the project engineer, had considered Daly's claims and had determined that Daly was due $171,326 under the contract. The city claimed that, pursuant to the terms of the contract, the court should enforce the project engineer's award.[1]

---

[1] The city also alleged that it already had paid Daly the award as determined by the project manager.

The case was tried to the court. The court concluded that the city had not proven the special defense of accord and satisfaction because there was no meeting of the minds between the city and Daly that the payments tendered by the city were in full satisfaction of the debt. The court also concluded that the city had not proven its second special defense because Daly, in accordance with the contract, objected to the appointment of Black & Veatch as project engineer and, therefore, Daly was not required to submit its claims to Black & Veatch. The court then concluded that Daly proved a number of its claims and was entitled to damages in the amount of $544,540.21 and interest in the amount of $178,878.81 for a total award of $723,419.02.[2] This appeal and cross appeal followed.

We first set forth our standard of review. It is well settled that "[t]he scope of our . . . review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings are clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 539–40, 767 A.2d 1169 (2001).

## I

## THE APPEAL

## A

The city first claims that the court's finding that Black & Veatch was not the project manager for pur-

---

[2] After recalculating interest, adding attorney's fees and ruling on several posttrial motions, the court awarded Daly $1,043,275.91.

poses of dispute resolution between the city and Daly was clearly erroneous. We disagree.

The following additional facts are necessary for our resolution of the city's claim. The contract provided that the project engineer was to be the arbiter of all disputes between the city and Daly. The contract further provided that where the city terminated the project engineer, the city was to name a successor project engineer. The successor project engineer was to be vested with the same status as the former engineer. Under the contract, Daly could object to the appointment of the successor project engineer.

There is evidence in the record that shows that on March 24, 1995, the city purported to name Black & Veatch as the successor project engineer.[3] There is also evidence that shows that in the months following the purported appointment of Black & Veatch, Daly did work with Black & Veatch on the project. In a letter dated June 19, 1995, the city advised Daly that it may not have formally notified Daly that it had switched the project engineer from Cascio Bechir to Black & Veatch. Counsel for Daly, in a letter dated October 9, 1995, advised the city that the "appointment [of Black & Veatch] was not made in accordance with [the contract] . . . [and that] Black & Veatch is unable to act on such administrative matters requiring an impartial and objective decision. Accordingly, Daly does not accept Black & Veatch as the designated Project Engineer under the contract." Later, in a letter dated December 8, 1995, Daly again notified the city that it objected to the appointment of Black & Veatch as project engineer on the grounds that it had not been consulted and because

---

[3] There is evidence that pursuant to the initial contract between the city and Black & Veatch, Black & Veatch was not to be vested with the power to review claims related to the project. The evidence further shows that not until 1996 was the contract between the city and Black & Veatch amended to provide Black & Veatch with the power to review claims on the project.

it did not believe that Black & Veatch was impartial or objective.[4]

Citing to the December 8, 1995 letter, the court found that Daly reasonably had exercised its contractual right to object to the appointment of Black & Veatch as project manager. Therefore, while Daly did, for convenience, recognize Black & Veatch for some purposes, Black & Veatch was not the project manager for purposes of dispute resolution. On the basis of our review of the record, we cannot conclude that the court's findings were clearly erroneous.

B

The city next claims that the court improperly failed to conclude that change order number six to the contract constituted an accord and satisfaction of Daly's claims for the events that occurred prior to June 8, 1995. We disagree.

The following additional facts are necessary for our review of this claim. When it was discovered that the force main running from the pumping station to the water pollution control plant was made out of asbestos, the parties prepared contract change order number one to allow the plaintiff to construct a new force main. Predictably, construction of the new force main delayed work on the rest of the project. Later, via change order number six dated June 7, 1995, the city compensated Daly $174,512.72 for delay on the project. In its action against the city, Daly claimed damages for extended home office overhead for the period between August

---

[1] Daly's concern regarding the possibility of Black & Veatch serving as the arbiter of claims on the project apparently flows from a provision of the contract between the city and Black & Veatch dated June 5, 1995, which provides that Black & Veatch will assist the city with "[p]reparation for litigation, arbitration, or other legal or administrative proceedings and appearances in court or at arbitration sessions in connection with project disputes or construction incidents."

1, 1994, and June 8, 1996. Daly also claimed damages for down time incurred while one of its subcontractors installed the new force main. The court awarded Daly damages for both claims.

The city claims that the court improperly failed to find that the city's payment to Daly made pursuant to change order number six constituted an accord and satisfaction of the claims for down time and the extended home office overhead prior to June 8, 1995. As the trial court noted in its memorandum of decision, "[t]o prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt . . . and that the debtor and the creditor negotiated a contract of accord to settle the claim. . . . The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted." (Citations omitted.) *Munroe* v. *Emhart Corp.*, 46 Conn. App. 37, 42–43, 699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997). "Without a mutual assent, or a meeting of the minds, there cannot be a valid accord." (Internal quotation marks omitted.) Id., 42. Whether a meeting of the minds has occurred is a factual determination. See id., 43.

Here, because the parties were aware of a number of potential claims by Daly and because change order number six was silent with respect to those claims, the court found that there was no meeting of the minds for purposes of accord and satisfaction. On the basis of our review of the record, we cannot conclude that the court's finding is clearly erroneous. Therefore, the court did not improperly conclude that change order number six did not constitute an accord an satisfaction.

## C

The city next claims that the court's findings of fact do not support its conclusions that the city was liable for (1) emergency bypass pumping costs and (2) extended home office overhead costs. We disagree.

### 1

The city first claims that the court's findings of fact do not support its conclusion that the city was liable for emergency bypass pumping. More specifically, the city claims that the court's conclusion is improper because it did not find that the city was at fault for the pumping. We disagree.

The following additional facts are necessary for our resolution of this claim. As part of the project, Daly agreed to install bypass pumping to serve the city while it constructed the new main pump station. After delay caused by the need to construct the new force main, Daly projected that the bypass pumping would remain in place for nine weeks. Because the city's existing pumps failed or were in danger of failing, the city requested that Daly provide emergency temporary bypass pumping. The pumping lasted for 176 days for a total cost of $421,364.78.[5] The court also found that Daly was entitled to an additional $35,910 for the fifteen days that the project was shut down to accommodate an event hosted by the city. The court then found that Daly's total expenses should be reduced by $39,200 due to an emergency component provision in the contract and $220,248 because Daly was responsible for ninety-two days of the pumping. Accordingly, the court found that Daly was entitled to a total of $197,827 in damages for its additional expenditures on bypass pumping.

---

[5] The court found that the total expenditure did not include Daly's costs for the nine weeks of pumping contemplated by the contract. Accordingly, the court credited the city $43,500.78, the amount contemplated by the contract.

Where a contractor, at the request of the owner, subsequently agrees to provide services not contemplated at the time of formation of the original contract, the new agreement is binding on the owner. See *Brian Construction & Development Co.* v. *Brighenti*, 176 Conn. 162 166–67, 405 A.2d 72 (1978). Here, on the basis of the court's findings that the emergency bypass pumping was necessitated by the failure of the city's existing pumps and that Daly performed the pumping at the request of the city, we conclude that the court's conclusion that the city is liable for the emergency bypass pumping is supported by the facts.[6]

2

The city next claims that the court's conclusion that it was liable to Daly for extended home office overhead costs was improper because it did not find that the city was at fault for the delay. We disagree.

The following additional facts are necessary for our resolution of this claim. The court found that Daly expended $349,151 in home office overhead costs for the 677 days between August 1, 1994, and June 8, 1996. Of the 677 days, the court found that Daly was responsible for seventy-seven days of the delay. The court then found that the city was responsible for a substantial portion of the delays encountered throughout the project. The delay attributed by the court to the fault of the city included the delay related to the discovery of the underground structure, the delay associated with the construction of the new force main not covered by a change order to the contract, the delay caused by the emergency bypass pumping and the delay caused by the accommodation of an event hosted by the city. The court concluded that Daly was entitled to $309,419 in

---

[6] The city also argues that the court's findings regarding the calculation of the number of days that it is liable for the emergency bypass pumping is clearly erroneous. On the basis of our review of the record, we cannot agree.

damages for its home office overhead expenses caused by the delay of the city.[7]

"Home office overhead is a well-recognized item of damage for delay . . . ." (Internal quotation marks omitted.) *Southern New England Contracting Co.* v. *State*, 165 Conn. 644, 663, 345 A.2d 550 (1974). The city argues, however, that because the court did not expressly find that the city was at fault for the delay that occurred within the delay period, it could not have concluded that the city was liable for the home office overhead. We disagree. We conclude, on the basis of the court's finding that the city was responsible for a substantial portion of the delays encountered throughout the project and, especially, its finding that the delay for the emergency bypass pumping was the fault of the city, that the court's conclusion is supported by the facts.[8]

## D

The city's final claim is that the court improperly failed to grant its motion to dismiss Daly's action for lack of subject matter jurisdiction. More specifically, the city claims that because the contract provided that the project engineer was the arbiter of disputes under the contract, the trial court did not have subject matter jurisdiction over the claims. We conclude that the city's

[7] In calculating its award, the court reduced the $349,151 that Daly had expended in home office overhead by $39,732 for the seventy-seven days of delay attributed to Daly.

[8] The city makes two other claims respecting the court's award of damages for extended home office overhead. First, citing *West* v. *All State Boiler, Inc.*, 146 F.3d 1368 (Fed. Cir. 1998), the city argues that the court's award was improper because it did not find that Daly (1) was on standby for the project and (2) was unable to take on other work. Second, the city claims that the court improperly calculated the amount of time that Daly was entitled to receive extended home office overhead expenses. On the basis of our review of the record, we conclude that these claims are raised for the first time on appeal and, accordingly, we decline to review them. Practice Book § 60-5.

claim is moot and, therefore, we do not have subject matter jurisdiction over the claim.

The following additional facts and procedural history are necessary for our resolution of the city's claim. In a motion dated December 20, 1996, the city moved the court to dismiss Daly's claims for breach of contract on the ground that the contract provided that all claims under the contract were to be decided by the project manager. In its memorandum of decision, the court agreed with the city's assertion that the parties contract provided that the project manager was the arbiter of disputes. The court concluded, however, that because there was a factual dispute regarding whether there was a project engineer in place to decide disputes, it had subject matter jurisdiction over the claims.[9] At trial, the court found that there was no project manager for purposes of dispute resolution.

"Mootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When . . . events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) *Ayala* v. *Smith*, 236 Conn. 89, 93–94, 671 A.2d 345 (1996).

---

[9] The court found that the argument in the city's motion was encompassed in its special defenses and that because there were facts in dispute, the issues should be decided at trial.

Here, we agree with the city's assertion that in ruling on the motion to dismiss, the trial court should have resolved the factual disputes relevant to the motion. See *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 315–16, 763 A.2d 1058 (2001). We conclude, however, that because those factual disputes were resolved in Daly's favor at trial, there is no practical relief that we can grant the city. Therefore, the city's claim is moot, and we do not have subject matter jurisdiction to review the claim.

## II

## THE CROSS APPEAL

On cross appeal, Daly claims that the court applied the wrong standard of proof to its tort claim that the city acted in bad faith. More specifically, Daly argues that the court applied the clear and convincing standard to the claim although the proper standard is preponderance of the evidence. We disagree.

The following additional facts are necessary for our resolution of Daly's claim. In its action, Daly claimed that the city was liable in tort for breach of good faith and fair dealing, negligence, negligent misrepresentation and intentional misrepresentation. In its memorandum of decision, the court found that Daly's claims were, in essence, a claim that the city acted in bad faith and that "there [was] no clear and compelling evidence to show or suggest that the city acted in bad faith toward Daly." Accordingly, the court found in favor of the city.

The standard of proof applicable to claims of bad faith is clear and convincing evidence. See *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 270, 721 A.2d 1197 (1998). Daly argues, however, that its claims are subject to the preponderance of the evidence standard. In light of the court's classification of Daly's several claims as a bad faith claim, we conclude that Daly

reads the court's memorandum of decision too narrowly. The court applied the correct standard.

The judgment is affirmed.

In this opinion the other judges concurred.