[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S APPLICATION TO CONFIRM ARBITRATION AWARD AND ON DEFENDANT JOHN LARUSSO'S MOTION TO DISMISS
 I CT Page 1480 STATEMENT OF THE CASE
On April 6, 2001, the plaintiff, Trading Direct, a division of York Securities, Inc. filed an application to confirm an arbitration award in favor of the plaintiff and against the defendants, John LaRusso and Michelle LaRusso. The following facts are undisputed. Michelle LaRusso entered into an online brokerage agreement with the plaintiff on December 17, 1999. The agreement included a provision in which the parties agreed that all controversies between them would be determined by arbitration. The agreement also contained a provision that stated that, as to holders of joint accounts, each account holder is jointly and severally liable for obligations that arise under the agreement. Michelle LaRusso tendered two checks to the plaintiff, for a total of $650,000. When, the plaintiff presented the checks for payment, the defendants' bank returned the checks to the plaintiff with the notations "Return unpaid for funds unavailable. . ." and "Refer to Maker." Michelle LaRusso utilized the account to make numerous trades but did not deposit any funds in the account. After the defendants failed to deposit funds in the account, the plaintiff liquidated the account and lost approximately $43,000 as a result.
The plaintiff alleges that John LaRusso also signed the signature page of the brokerage agreement, and in support of this claim, the plaintiff submitted a copy of the agreement which purportedly has his signature on it. John LaRusso maintains that he never signed the brokerage agreement. He claims that Michelle LaRusso forged his signature on the document.
On May 22, 2000, the plaintiff filed a statement of claim for arbitration with the arbitration division of the New York Stock Exchange to resolve its dispute with the defendants. On December 8, 2000, a panel of three arbitrators held a hearing regarding the plaintiff's claim. That same day, the arbitrators decided as follows: "The undersigned arbitrators have decided and determined in full and final settlement of all claims between the parties that: Trading Direct established that the checks tendered on behalf of the Respondents were fraudulently issued. Michelle LaRusso and John LaRusso shall pay to Trading Direct $42,979.00 as an award on its Statement of Claim. In addition, Respondents shall pay to Trading Direct interest on the award at 9% from the date of the receipt of the award until the date of payment. In addition, Michelle LaRusso and John LaRusso shall pay to Trading Direct $14,200 in attorneys' fees. Forum fees, payable to the New York Stock Exchange, are assessed against Michelle LaRusso and John LaRusso." The arbitrators remarked: "[We] heard the case after Michelle LaRusso and John LaRusso failed to appear at the hearing. [We have determined] that Michelle LaRusso and John LaRusso received notice of the date, time, and place of the hearing in accordance with Exchange Rules." CT Page 1481
The plaintiff subsequently filed its application to confirm the arbitration award. On June 4, 2001, John LaRusso filed an answer and special defenses. He also filed an objection to the application, a motion to dismiss due to lack for subject matter jurisdiction, a supporting memorandum. On the same date, Michelle LaRusso separately filed her answer and special defenses. Both the plaintiff and the defendants have filed supplemental memoranda in support of their positions, the plaintiff on June 11 and September 11, 2001, and the defendants on July 13, 2001. On or about December 21, 2001, the plaintiff filed an additional statement requesting the court to consider documents evidencing John LaRusso's actual knowledge of the arbitration proceedings.
 II DISCUSSION A STANDARD OF REVIEW
The law is well established that "arbitration is the favored means of settling differences. . ." (Internal quotation marks omitted.) DiamondFertiliser Chemical Corp. v. Commodities Trading International Corp.,211 Conn. 541, 546, 560 A.2d 419 (1989). "[The Supreme Court of Connecticut] has long recognized and endorsed arbitration as an alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) Id. "[Courts] undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of dispute resolution." Stratford v. International Assn. of Firefighters, AFL-CIO,Local 998, 248 Conn. 108, 115, 728 A.2d 1063 (1999).
"[T]he party challenging the award, bears the burden of demonstrating that the arbitration award violates the parties' agreement." DiamondFertiliser Chemical Corp. v. Commodities Trading International Corp., supra, 211 Conn. 550. "Every reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." Bic Pen Corp. v. Local No. 134, 183 Conn. 579, 585,440 A.2d 774 (1981).
An application to confirm an arbitration award is controlled by General Statutes § 52-417, which states in pertinent part: "At any time CT Page 1482 within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and52-419." Section 52-418 states that an arbitration award shall be vacated: "if [the court] finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means . . . or (4) if the arbitrators have exceeded their powers. . . ." Section 52-419
provides that an arbitration award shall be modified or corrected "if [the court] finds any of the following defects . . . (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted. . . ."
 B Defenses of John LaRusso
In his motion to dismiss, special defenses, and objection to confirmation, John LaRusso argues that this court lacks subject matter jurisdiction over the plaintiff's claim against him because he never entered into an agreement with the plaintiff and never agreed to arbitrate disputes with the plaintiff. He insists that he was not a customer of the plaintiff and did not have an account with the plaintiff. He contends that Michelle LaRusso forged his signature on the brokerage agreement without his knowledge and authorization.
In response, the plaintiff argues that the court should confirm the arbitration award because this defendant has not met his burden of demonstrating that the arbitrators lacked the authority to render the award. More specifically, the plaintiff claims that the defendant failed to assert any defenses in the arbitration proceedings and they failed to move to vacate, modify or correct the award within thirty days of the date they received notice of the award as required by General Statutes § 52-420 (b).
General Statutes § 52-420 (b) states, in pertinent part: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who asks for the motion." "If a motion to vacate, modify or correct is not made within the thirty-day time limit specified in General Statutes 52-420, the award may not thereafter be attacked on any of the grounds specified in 52-418 and52-419." Amalgamated Transit Union, Local 1588 v. Laidlaw Transit, Inc.,33 Conn. App. 1, 4, 632 A.2d 713 (1993). CT Page 1483
In this case, the arbitrators issued the award on December 8, 2000. In her answer, Michelle LaRusso admits that she was notified of the award on December 27, 2000. Although John LaRusso denies that he was so notified, the marshall's return in this case establishes that John LaRusso was served with the summons and complaint by abode service on April 24, 2001, and he does not contest this service. The defendants did not file their pleadings and motions contesting the award until June 4, 2001, more than 30 days beyond any conceivable notice date.
In certain limited situations, however, courts have determined that an objection to an application to confirm should be entertained even when the claim was not timely filed as required by § 52-420 (b). See, e.g., Carr v. Trotta, 7 Conn. App. 272, 274-275, 508 A.2d 799, cert. denied, 200 Conn. 806, 512 A.2d 229 (1986); Shrader v. Zeldes, Needle Cooper, 45 Conn. Sup. 130, 136, 702 A.2d 1214 (1997). In this case, John LaRusso claims that the arbitrators and the court lack subject matter jurisdiction because he did not enter into an arbitration agreement with the plaintiff. He avers that Michelle LaRusso signed his name to the agreement without his knowledge or consent, and thus, that his signature was obtained by fraud.
Thus, the question presented as to John LaRusso's claims is whether a claim of fraud in the execution of the arbitration agreement may be asserted as a defense to the confirmation of an arbitration decision in the absence of a timely motion to vacate or correct the award under § 52-420 (b) and in the face of evidence that the objector had actual knowledge of the arbitration proceedings. This question appears to be an issue of first impression in Connecticut as the parties have not directed the court to any cases that have addressed this precise issue and this court has not located any.
There is no question that the duty to arbitrate as presented here is a creature of contract — in the absence of a written, arbitration agreement, there can be no obligation either to arbitrate a dispute or to be bound by an arbitration decision. See C.G.S. § 52-408; Saw MillBrook Racing Assn., Inc. v. Boston Realty Advisors, Inc.,39 Conn. App. 444, 449-50, 664 A.2d 819 (1995) ("Arbitration is a creature of contract and there must be an express agreement to arbitrate in order for the arbitrators to have authority and the court to have jurisdiction.") The essence of Mr. LaRusso's argument is that he did not agree to arbitrate anything with the plaintiff and his assent cannot be imposed by fraud. The plaintiff does not contest this basic proposition, but responds by making a procedural argument that sounds in waiver or estoppel — by not raising the fraud issue during the arbitration process or through a motion to vacate or correct, Mr. LaRusso is precluded CT Page 1484 from raising it now. See Total Property Services of New England, Inc. v.Q.S.C.V., Inc., 30 Conn. App. 580, 586, 621 A.2d 316 (1993) ("[O]ur courts recognize a waiver rule, which provides that if a party does not object to the arbitrability of a dispute before the arbitrator, the objection to arbitrability is deemed waived.") Mr. LaRusso's obvious rejoin is that subject matter jurisdiction may be raised at any time, and the arbitrators cannot acquire jurisdiction based on an arbitration agreement that is a fraud in the factum. The court agrees with Mr. LaRusso's position.
The arbitration statute itself, while not expressly dispositive, provides support for the defendant's position. General Statute § 52-408
states that a written agreement to arbitrate "shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or equity for the avoidance of written contracts generally." As explained by the Supreme Court in Dewart v. Northeastern Gas Transmission Co.,140 Conn. 446, 449, 101 A.2d 299 (1953), "[t]his means that an arbitration agreement, like any other, can be declared void for fraud, misrepresentation, duress or undue influence. . . ." The effect of Section 52-408 has also been explained as follows: "[W]here the issue is the validity of the contract of submission, a party has a right to a judicial determination of that issue at least up until the time the award has been transmuted into a final judgment by an order of confirmation. This exception is based on the theory that the avoidance of contracts clause in General Statutes § 52-408 recognizes the right of a party to have a judicial determination of the validity of the agreement of submission. Under this exception, even if a party does not attack the award by proceeding under General Statutes §§ 52-418 and 52-419, he may assert in an independent proceeding that the award is invalid because the contract of submission is invalid." (Internal quotation marks and citations omitted;) Kilby v. St. Paul Ins. Co., 29 Conn. Sup. 22, 28-29,269 A.2d 295 (1970).
An issue similar to the question presented here was raised in Carr v.Trotta, supra, 7 Conn. App. 275. In Carr a defendant challenged an arbitration award on the ground that the award was unenforceable because it was issued beyond the thirty days, statutory deadline prescribed in § 52-416 (a). The lower court held that the defendant's challenge was barred by his failure to move to vacate the award as provided under § 52-420 (b). The Appellate Court reversed this part of the lower court's holding explaining that the defendant's claim was "in effect an attack upon the jurisdiction of the arbitrator to render an award. . . . The question of subject matter jurisdiction may be raised at any time." Id., 274-75.
The court also finds instructive the Appellate Court decision in TotalCT Page 1485Property Services of New England, Inc. v. Q.S.C.V., Inc., supra,30 Conn. App. 580. In Total Property, the defendant did not appear at the arbitration proceedings, but appeared in the trial court to object to confirmation of the arbitration award on the ground that it did not sign the arbitration agreement and that it had not received notice of the arbitration. The lower court confirmed the award on the ground that since the defendant failed to raise these issues during the arbitration, it had waived the issue of arbitrability. Id. at 586. The Appellate Court held that it was error for the trial court not to hold a full hearing on these issues. The Appellate Court reasoned that because the defendant "raised issues about the existence of a contract to arbitrate, and not about the arbitrability of a dispute, the application of the waiver rule was misplaced." Id.
As compared to defendant John LaRusso, the defendant in Total Property
filed a timely objection to confirmation of the arbitration award. The plaintiff also emphasizes that the defendant in Total Property alleged that it had not received notice of the arbitration proceedings, whereas the evidence here is the John LaRusso did have such notice but failed to appear in the proceedings. These factual distinctions are without legal significance because they are immaterial to the established rule that the Appellate Court found dispositive: that waiver is inapplicable to an objection asserting that there was no arbitral jurisdiction. "The authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgement"; Bennett v. Meader, 208 Conn. 352, 364, 545 A.2d 553 (1988); "the [defendant's] challenge to the authority of the arbitrator, although brought after the award, was not waived and was, in fact, timely." TotalProperty Services of New England, Inc. v. Q.S.C.V., Inc., supra,30 Conn. App. 592.
Therefore, a defendant's notice of the arbitration proceeding is immaterial to his right to acquire judicial determination of the arbitrators' jurisdiction. This court finds that the defendant's claim that the arbitration agreement is a fraud raises a jurisdictional issue which the court must now address. The defendant has a right to have the court determine whether the arbitrators had jurisdiction to issue the award, notwithstanding his failure to assert this position during the arbitration or through a timely motion under § 52-420. Mr. LaRusso is not questioning whether the arbitration award is beyond the parties' submission. He is arguing that there does not exist an agreement for any arbitration submission. Therefore, the waiver rules do not apply and the jurisdictional claim may be made at any time prior to judicial confirmation of the award.
The court appreciates that "[alrbitration is favored by the courts CT Page 1486 because it is intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . The autonomy of voluntary submission to arbitration requires a minimum of judicial intrusion. . . . In furtherance of these principles, our courts recognize a waiver rule, which provides that if a party does not object to the arbitrability of a dispute before the arbitrator, the objection to arbitrability is deemed waived." Total Property Services of New England, Inc. v.Q.S.C.V., Inc., 30 Conn. App., supra, at 586. Nevertheless, "[a]rbitration agreements are to be strictly construed and such agreements should not be extended by implication. . . ." (Internal quotation marks omitted.) Id., 587. "Persons thus cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves." (Internal quotation marks omitted.) Id. The plaintiff here is attempting to compel John LaRusso to arbitrate a disagreement when this defendant insists that he has not agreed to arbitrate and that the agreement on which the plaintiff relies is fraudulent. "If the [defendant] is not permitted a hearing on the issue of whether it was a party to the arbitration agreement, we would run the risk of affirming the confirmation of an arbitration against a party that did not agree to arbitration. Such a result would be untenable, and defy both fairness and logic." Total Property Services of New England, Inc. v. Q.S.C.V., Inc., supra, 30 Conn. App. 588-89.
Both parties, particularly the plaintiff, have addressed the applicability of the case JCV Investment Group, Inc. v. Manjoney,56 Conn. App. 320, 742 A.2d 438 (2000). The holding of JCV InvestmentGroup is inapposite. In that case, the court held that the plaintiff, having chosen to proceed with arbitration, waived its claim that it was not a party to the contract containing the arbitration clause. The present case is distinguishable from JCV Investment Group because although the party contesting the arbitration award in that case contended that it had not signed the arbitration agreement, it nevertheless proceeded to participate in the arbitration process and failed to contest the arbitrator's authority during the arbitration proceedings. In essence, there was an implied consent to the arbitrator's decision and a waiver of the right to contest the arbitrator's authority. "Having proceeded to participate in the arbitration, the corporation cannot now claim that it is not bound by the arbitrator's decision. While the applicant is correct that absent an agreement with the proper entity to arbitrate, no arbitration can be compelled, . . . once the entity against whom arbitration is demanded submits to arbitration [it] is estopped to claim that it ought not to be bound by the arbitrator's decision." JCVInvestment Group v. Manjoney, Superior Court, judicial district of New Haven at New Haven, Docket No. 407452 (June 9, 1998, Pittman, J.); accord, Sawmill Brook Racing Assn., Inc. v. Boston Realty Advisors,CT Page 1487Inc., 39 Conn. App. 444, 451-455, 664 A.2d 819 (1995) (assent by nonsignors of an arbitration is acquired by their participation without objection in the arbitration proceedings). Here, although the plaintiff provided evidence that John LaRusso may have been aware of the arbitration proceedings, it has neither claimed, nor provided any evidence that this defendant actually appeared and participated in the proceedings.[1]
The plaintiff also contends that John LaRusso has not provided sufficient evidence to establish that he did not execute the agreement. The plaintiff submitted a copy of the agreement, including a signature page that it claims bears John LaRusso's signature. (Plaintiff's Application, Exhibit A, p. 1). John LaRusso submitted an affidavit in which he avers that the signature on the signature page is not his and that his wife signed his name to the document without his knowledge and consent. (John LaRusso Affidavit, ¶ 4). This factual dispute concerning Mr. LaRusso's signature cannot be determined on this record and an evidentiary hearing will be scheduled.
 C Defenses of Michelle LaRusso
In her answer, Michelle LaRusso admits that she entered into a brokerage agreement with the plaintiff and that the agreement contained a provision stating that the parties would submit all controversies to arbitration. She also admits that the arbitrators awarded the plaintiff approximately $43,000 plus interest and $14,200 in attorneys' fees. Nevertheless, she maintains that the arbitration award should not be confirmed because there has been an accord and satisfaction, the arbitrators had no authority to award attorney fees, and the award violates public policy.
As to the defendant's claim that the arbitrators lacked the authority to award attorneys' fees, although she couches this argument as a challenge to the subject matter jurisdiction of the arbitrators, it is actually a claim that the arbitrators' award of attorneys' fees was not within the scope of the submission. Because Michelle LaRusso failed to assert this claim to the arbitrators and failed to assert it as part of a timely objection to confirmation under § 52-420 (b) she is precluded from raising it at this time. See § 52-420 (b); Total PropertyServices of New England, Inc. v. Q.S.C.V., Inc., supra, 30 Conn. App. 586.
Michelle LaRusso's other claims do not raise jurisdictional issues, and although required by § 52-420 (b), they were not made within 30 days of her notice of the arbitration decision. Specifically as to her claim that a criminal restitution order constitutes accord and satisfaction, CT Page 1488 she insists that the waiver rule and provisions of § 52-420 (b) cannot apply because the criminal restitution order issued months after
notice of the arbitration award. As previously stated, an arbitration agreement is unenforceable "when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." § 52-408. As accord and satisfaction is a well-acknowledged defense to enforcement of a contract, a cogent position can be maintained that this defense may be asserted against the confirmation of an arbitration award even under the circumstances presented here. Nevertheless, as explained more fully below, the court finds no merit to the accord and satisfaction claim, and therefore, the court will not resolve the issue whether the claim is time barred under § 52-420 (b). Assuming arguendo that this accord and satisfaction defense may now be asserted, it nevertheless fails for lack of merit.
Michelle LaRusso represents that in April 2001, as part of her agreement to resolve criminal charges lodged against her, she entered into a restitution agreement pursuant to which she agreed to pay to the plaintiff a total of $45,127.95 in sixty monthly payments of $350 starting May 25, 2001, and a lump sum of $24,127.95 by April 23, 2006. (Michelle LaRusso's Answer, Exhibit 1, p. 1). These payments are made through the New York City Department of Probation. She also submits a court restitution order indicating that the total includes $42,979 in restitution plus a surcharge of 5% or $2,148.95. (Michelle LaRusso's Answer, Exhibit 1, p. 2).
Michelle LaRusso contends that because the probation and restitution order is for the exact amount of the arbitration award, and the plaintiff is listed as the beneficiary, she has established that they reached an accord. The listing of a third party as the beneficiary on a contract, however, does not prove that the party assented to the terms of the contract. See generally Wesleyan University v. Rissil Construction Co., supra, 1 Conn. App. 354-55 (a third party is not held to the terms of an agreement, even if it received benefits thereunder.) Michelle LaRusso has not offered anything to establish that the plaintiff participated in or otherwise consented to the restitution agreement. The mere existence of the restitution agreement does not prove either directly or indirectly that the plaintiff participated in its creation, or more importantly, accepted it as a waiver of its civil remedies. This is so because the criminal case and its disposition are matters where the legally recognized parties are the state and the defendant, not the victim. Thus, the law is well settled: that a criminal verdict, even if it includes an order of restitution, does not preclude the victim from pursuing its civil remedies.
"[T]o prove an accord and satisfaction, the defendant must show that at CT Page 1489 the time of the agreement there was a good faith dispute over the existence of a debt . . . and that the debtor and the creditor negotiated a contract of accord to settle the claim." M.J. Daly Sons, Inc. v. WestHaven, 66 Conn. App. 41, 48, ___ A.2d ___, cert. denied, 258 Conn. 944, ___ A.2d ___ (2001). "The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted. Without mutual assent, or a meeting of the minds, there cannot be a valid accord." (Citations omitted; internal quotation marks omitted.) M.J. Daly Sons, Inc. v. West Haven, supra,66 Conn. App. 48. In this case, the mere claim as asserted here, that a criminal action was resolved with an order of restitution to the victim, fails to establish that the victim waived its right to acquire civil relief or that there was a clear meeting of the minds to this effect.
In Michelle LaRusso's remaining claims, she contends that the arbitration award violates public policy. This court has held that the waiver rules do not apply to a claim that an arbitration award violates public policy. Such a defense may be asserted at any time prior to judicial confirmation of the award because "[a]s a matter of judicial prudence and in the exercise of the court's inherent judicial discretion, the court should not confirm an arbitration decision that violates well-established public policy." Shrader v. Zeldes, Needle Cooper,45 Conn. Sup. 130, 135-36, 702 A.2d 1214 (1997). This holding in Shrader
relied heavily on the following statement of the Supreme Court in Garrityv. McCaskey, 223 Conn. 1, 6, 612 A.2d 712 (1992): "It is . . . appropriate to recognize that . . . the power to strike an arbitration ruling as violative of public policy exist[s] apart from any particular grant of authority from the legislative branch. Because of the multiple sources authorizing judicial review of arbitration awards, we therefore deem inaccurate the implication in. . . . earlier cases that 52-418 (a) (4) is the sole source of the court's power of review." The court will therefore review this defendant's claims that the arbitration award violates public policy.
The defendant contends that public policy is violated by the arbitrator's award of attorney fees. Under Connecticut law, a prevailing party may recover attorney fees when such a recovery is authorized by contract or is an element of punitive damages. See generally, Hartfordv. International Assn. of Firefighters, Local 760, 49 Conn. App. 805,816-818, 717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). As previously explained, Michelle LaRusso has waived her right to claim that the award of attorneys' fees was beyond the purview of the arbitrators based on the unrestricted submission, and no public policy is infringed by arbitrators awarding attorney fees when this issue is part of the matters submitted to them for disposition. "The public policy CT Page 1490 exception applies only when the award is clearly illegal or clearly violative of a strong public policy." Garrity v. McCaskey, supra,223 Conn. 7.
Michelle LaRusso's last argument is that a confirmation of the arbitration award would violate a public policy against a plaintiff receiving more than one recovery for the same injury. "It is a time-honored rule that an injured party is entitled to a full recovery only once for the harm suffered." Buell v. American Universal Ins. Co.,224 Conn. 766, 775, 621 A.2d 262 (1993). "[A] litigant may recover just damages for the same loss only once. The social policy behind this concept is that it is a waste of society's economic resources to do more than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste." (Emphasis omitted.) Haynes v. Yale-NewHaven Hospital, 243 Conn. 17, 23-24, 699 A.2d 964 (1997). "Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgements." (Internal quotation marks omitted.) Id., 44.
Despite these authorities, on the allegations of this case, the court will not definitively reach the questions whether a public policy issue is implicated by this "double recovery" claim or whether any such policy has been violated. The defendant has neither alleged, nor established that she will not receive credits against the arbitration award for any payments made under the restitution order or vice-versa. The defendant is merely assuming that this is not the case in order to erect a basis to make this "double recovery" argument. Further, although Michelle LaRusso has stated that she has started making the periodic payments as required under the restitution order, she has not claimed that there has been full and complete satisfaction of this order in a manner that would preclude the plaintiff from acquiring civil relief. The general rule is that a victim benefitting from a criminal restitution order has no authority itself to seek civil execution on or collection of the restitution in the event of any possible default. In short, in order to protect its legal interests, the plaintiff has the right to pursue its civil remedies as provided by law through the arbitration agreement.
 CONCLUSION
Therefore, as to John LaRusso, a factual issue exists as to whether he assented to the arbitration with the plaintiff and an evidentiary hearing will be scheduled on this question. This hearing is scheduled for Monday, February 25, 2002 at 2:00 p.m. As to Michelle LaRusso the arbitration award is hereby affirmed. CT Page 1491
In addition to the appearance of their counsel, both John LaRusso and Michelle LaRusso are ordered to appear personally at the February 25, 2002 to address the issues raised by the outstanding matters, as well as a motion to withdraw pending before the court.
So ordered this day of February 2002.
Stevens, J.