******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ELECTRICAL CONTRACTORS, INC. *v.* 50 MORGAN
HOSPITALITY GROUP, LLC, ET AL.
(AC 44475)

Alvord, Cradle and Lavine, Js.

*Syllabus*

The plaintiff subcontractor sought to recover damages from, among others, the defendant general contractor, G Co., for, inter alia, breach of contract and breach of the implied covenant of good faith and fair dealing. The plaintiff entered into a contract with G Co. in connection with a construction project for the renovation of a property owned by the named defendant, M Co. In its operative complaint, the plaintiff alleged, inter alia, that G Co. had failed to pay for materials and services that the plaintiff had provided. In its special defenses, G Co. asserted that language in the parties' contract made clear that the G Co.'s obligation to pay the plaintiff was dependent upon G Co. first receiving payment from M Co. Specifically, the contract stated that the plaintiff expressly agreed that payment by M Co. to G Co. was a "condition precedent" to G Co.'s obligation to make partial or final payments to the plaintiff. G Co. filed a motion for summary judgment on the counts against it based on that contractual language, arguing that it had no duty to pay the plaintiff because it had not yet received payment from M Co. The trial court granted G Co.'s motion and rendered summary judgment in favor of G Co., and the plaintiff appealed to this court.

1. The trial court properly granted G Co.'s motion for summary judgment as to the plaintiff's breach of contract claim: the clear and unambiguous language of the parties' contract provided that G Co. was not obligated to pay the plaintiff until it received payment from M Co.; moreover, this court declined the plaintiff's invitation to find ambiguity in the payment provision and to interpret it to mean that G Co.'s obligation to pay the plaintiff merely was postponed for a reasonable period of time; furthermore, the plaintiff did not cite any binding appellate authority to support its assertion that clauses such as the one at issue in the present case are disfavored in Connecticut and, more particularly, in the construction industry.

2. The trial court properly granted G Co.'s motion for summary judgment as to the plaintiff's claim for breach of the implied covenant of good faith and fair dealing: the plaintiff failed to allege or to provide any evidence to create a genuine issue of material fact that G Co. acted in bad faith in attempting to collect payment from M Co. or in failing to pay the plaintiff; moreover, this court's independent review of the record that was before the trial court when it rendered its summary judgment did not reveal a potential sinister motive or dishonest purpose on the part of G Co.

Argued January 3—officially released April 12, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Moukawsher, J.*, rendered summary judgment in favor of the defendant Greython Construction, LLC, and the plaintiff appealed to this court. *Affirmed.*

*Paul R. Fitzgerald*, for the appellant (plaintiff).

*Edward R. Scofield*, with whom, on the brief, were *Heather Spaide* and *Joseph J. Cessario*, for the appellee (defendant Greython Construction, LLC).

*Opinion*

LAVINE, J. The plaintiff, Electrical Contractors, Inc., appeals from the summary judgment rendered by the trial court in favor of the defendant Greython Construction, LLC (Greython), regarding claims arising out of a contract between the plaintiff and Greython pursuant to which the plaintiff, as Greython's subcontractor, was to complete work on a property owned by the defendant 50 Morgan Hospitality Group, LLC (50 Morgan).[1] On appeal, the plaintiff claims that the court erred in granting Greython's motion for summary judgment (1) based on language in the contract providing that payment by 50 Morgan to Greython was a "condition precedent" to Greython's obligation to make payments to the plaintiff, and (2) because Greython failed to present any evidence demonstrating the absence of a genuine issue of material fact either that it was not the cause of 50 Morgan's failure to make payment or that it had made a substantive effort to collect payment. We disagree with the plaintiff and, accordingly, affirm the judgment of the court.

The record reveals the following relevant undisputed facts and procedural history. Greython served as the general contractor for a project involving the renovation of a property owned by 50 Morgan. The plaintiff served as a subcontractor for Greython. On or about February 3, 2017, Greython entered into a contract with the plaintiff in which the plaintiff agreed to "furnish all labor, material, and equipment to perform all [electrical] work" for the project. The plaintiff provided Greython with requisitions seeking payment for materials furnished and services provided in connection with the project.

At the heart of this appeal is the meaning of the following language of the contract between the plaintiff and Greython. Article 2 of the contract provides that Greython will pay the plaintiff fixed sums of money in accordance with article 6 of the contract. Article 6 provides in relevant part: "[The plaintiff] shall submit to [Greython] a requisition, on forms provided by [Greython] . . . . Partial payments shall be due following receipt of payment [from] [50 Morgan] to [Greython] in the amount of 95 [percent] of the material in place for which payment has been made to [Greython] by [50 Morgan]. [*The plaintiff*] *expressly agrees that payment by* [*50 Morgan*] *to* [*Greython*] *is a condition precedent to* [*Greython's*] *obligation to make partial or final payments to* [*the plaintiff*] *as provided in this paragraph.* . . ." (Emphasis added.)

On January 31, 2018, the plaintiff commenced this action seeking payment for the costs of the materials it had furnished and the services it had provided in connection with the renovation project. On July 6, 2018, the plaintiff filed the amended complaint, which is the

operative complaint. In the complaint, the plaintiff alleged that it performed its obligations under the subcontract by providing labor, materials, and equipment for the project. Greython, however, failed to pay the plaintiff for all amounts due for the work it had completed on the project. The plaintiff asserted that "the sum of $350,616.65, plus attorney's fees, accrued interest, and costs remains due and owing to [the plaintiff]."

The plaintiff alleged the following relevant counts against Greython:[2] breach of contract for failing to pay the plaintiff the contract balance of $350,616.65 (count two); breach of the implied covenant of good faith and fair dealing for "failing to make payment of the sums due to [the plaintiff] that are not subject to a good faith dispute" and for "failing to provide notice or response to [the plaintiff] in good faith as to the specific, justifiable reasons for Greython's failure to make payment to [the plaintiff]" (count three); unjust enrichment (count four); and a violation of General Statutes § 42-158j for failure to pay the plaintiff any undisputed amount and refusing to place any disputed funds in escrow when it was put on notice of the plaintiff's claim (count six).[3]

On March 4, 2019, Greython filed an amended answer and special defenses to the operative complaint, in which it asserted two special defenses, both of which contended that the relevant language in article 6 made clear that Greython's obligation to pay the plaintiff was dependent upon Greython first receiving payment from 50 Morgan. On the same date, Greython filed a motion for summary judgment as to the second, third, fourth, and sixth counts of the operative complaint. Greython filed a memorandum of law in support of its motion, in which it argued that the language in article 6 of the contract was clear and unambiguous that it was not obligated to pay the plaintiff until it received payment from 50 Morgan. Because it had not yet received payment from 50 Morgan, Greython argued, "[it] ha[d] no duty to pay [the plaintiff] . . . ." On April 5, 2019, the plaintiff filed an objection to Greython's motion and an accompanying memorandum of law. The gist of the plaintiff's argument was that the payment provision in article 6 was ambiguous as to which party bore the risk of 50 Morgan's nonpayment. Thus, the plaintiff argued, this provision should be interpreted to mean that nonpayment by 50 Morgan "merely postpone[s] for a reasonable period of time" Greython's obligation to pay the plaintiff. On April 18, 2019, Greython filed a reply to the plaintiff's objection.

On April 24, 2019, the court heard oral argument on Greython's motion for summary judgment. On April 30, 2019, the court issued a memorandum of decision granting Greython's motion for summary judgment in its entirety as it pertained to the plaintiff. The court concluded that, pursuant to article 6 of the contract, Greython was not obligated to pay the plaintiff until 50

Morgan paid Greython. The court stated: "[The plaintiff] say[s] the court should read the language at issue [in article 6 of the contract] to mean that [Greython] will pay [the plaintiff] within a reasonable period of time even if the owner never pays [Greython]." The court noted that "courts have deviated from this view and read into some contracts the reasonable time language based upon the implications of labelling a provision . . . 'pay-when-paid' . . . or . . . ['pay-if-paid'].[4] But none of [their decisions] bind [the trial] court to do likewise." (Footnote added.) On the contrary, the court stated, "[t]he courts that do bind [the trial] court suggest that [a reviewing court] will see an obvious condition precedent and the risk bearing arrangement it reflects and enforce it."

The court further stated: "The obvious import of the contract language in this case is that if [Greython] never gets paid then neither do its subcontractors. Because [50 Morgan's] payment is labelled a condition precedent—a thing that *must* happen first—the contract needed no additional words to make this consequence clear to a reader of ordinary intelligence." (Emphasis in original.) The court concluded: "So [the plaintiff cannot]—under the present circumstances—win under the plain language of the contract."

Regarding the count alleging breach of the covenant of good faith and fair dealing, the court stated: "[T]he [plaintiff] certainly express[es] dissatisfaction with Greython's efforts [to collect payment from 50 Morgan] but [does not] offer any evidence sufficient to create an issue of fact over whether Greython acted in bad faith. Instead, [although] questions have been raised about Greython's efforts, the [plaintiff has] cited no evidence that could possibly support a claim that Greython has acted from some interested or sinister motive."

On May 15, 2019, the plaintiff, pursuant to Practice Book §§ 11-11 and 11-12, filed a "motion for reargument/ reconsideration and articulation" of the court's decision on Greython's motion for summary judgment. On May 20, 2019, the court denied that motion. This appeal followed.[5] Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the relevant standard of review, which applies to both of the plaintiff's claims. "This court's standard of review for a motion for summary judgment is well established. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue

[of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Buehler* v. *Newtown*, 206 Conn. App. 472, 480–81, 262 A.3d 170 (2021).

I

The plaintiff first claims that the court erred in granting Greython's motion for summary judgment based on language in the contract providing that payment by 50 Morgan was a "condition precedent" to Greython's obligation to make payments to the plaintiff. The plaintiff contends that "the overwhelming weight of authority in Connecticut holds that similar provisions in construction contracts do not excuse a general contractor's payment obligations to its subcontractors." We disagree.

The following legal principles govern our interpretation of contracts. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . .

"[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]. . . . Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [written instrument] must emanate from the language used in the [writing] rather than from one party's subjective perception of the terms. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 7–8, 35 A.3d 177 (2011).

The plaintiff argues that the court incorrectly interpreted the payment provision in article 6 to mean that

if Greython never receives payment from 50 Morgan, it is not obligated to pay its subcontractors. Specifically, the plaintiff argues that the court incorrectly interpreted the payment provision in article 6 as a "pay-if-paid" clause. The plaintiff states: " 'Pay-if-paid' provisions in construction contracts seek to transfer the risk of owner default between the general contractor and subcontractor by contractually making the owner's payment to the general contractor a condition precedent to the general contractor's payment to the subcontractor." Thus, unlike a "pay-when-paid" clause, if a general contractor never receives payment from an owner, it is not obligated to pay its subcontractors at all. The plaintiff asserts that the court instead should have interpreted the payment provision in article 6 as a "pay-when-paid" clause. A "pay-when-paid" clause merely postpones a general contractor's obligation to pay its subcontractors for a reasonable period of time, as opposed to creating a condition precedent to payment. See *DeCarlo & Doll, Inc.* v. *Dilozir*, 45 Conn. App. 633, 641 n.4, 698 A.2d 318 (1997) (*DeCarlo*). Thus, it claims, when a contract contains a "pay-when-paid" clause, a general contractor remains obligated to pay its subcontractors even if it never receives payment from the owner.

The plaintiff argues that clauses like the one in article 6 are "disfavored" in Connecticut and that "[t]he trial court's decision . . . represents the minority position not only in Connecticut, but also nationally." The plaintiff reasons that because such clauses "are disfavored by courts, they will be enforced only where the contract language clearly reflects the subcontractor's agreement to assume the risk of the owner's nonpayment." The plaintiff contends, without citing any binding authority, that "Connecticut courts have universally stated that in order to effectively transfer the risk of owner nonpayment from the general contractor to a subcontractor, a contingent payment provision must be clear and unequivocal," and, "[a]t [a] minimum, the provision must clearly state which party bears the risk of the project owner failing to pay or becoming insolvent."[6] The plaintiff argues that article 6 "is not sufficiently clear and unequivocal to transfer the risk of [50 Morgan's] default from [Greython] to the plaintiff." In essence, the plaintiff argues that article 6 is ambiguous as to which party assumed the risk of 50 Morgan becoming insolvent. Thus, the plaintiff asks this court to interpret the payment provision in article 6 to mean that Greython's obligation to pay it merely was temporarily postponed for a reasonable period of time and insists that Connecticut law favors such a result.

The plaintiff, however, is unable to cite any binding appellate authority, and we are aware of none, that supports its assertion that clauses like the one in article 6 are disfavored in Connecticut generally, and particularly, as it argues, in the construction industry.[7] In support of its argument that we should interpret the rele-

vant language in article 6 as a "pay-when-paid" clause, the plaintiff relies primarily on *DeCarlo & Doll, Inc.* v. *Dilozir*, supra, 45 Conn. App. 633, which is distinguishable from the present case.[8] As this court noted in *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 143 Conn. App. 581, 591 n.4, 72 A.3d 1113, cert. denied, 310 Conn. 910, 76 A.3d 626 (2013), *DeCarlo* "simply did not involve a 'pay-when-paid' provision. Although the court made a comparison to 'pay-when-paid' provisions, that comparison was dicta . . . ." (Citation omitted.) Furthermore, unlike in the present case, the clause at issue in *DeCarlo* did not include the phrase "condition precedent," and this court expressly concluded in *DeCarlo* that the relevant provision "[was] not a condition precedent . . . ." *DeCarlo & Doll, Inc.* v. *Dilozir*, supra, 643.[9]

Greython counters that the payment provision in article 6 is clear and unambiguous that its obligation to pay the plaintiff is expressly conditioned on it receiving payment from 50 Morgan. Greython notes that article 6 "contains no language or provisions [that] are focused on establish[ing] the time frame in which [the plaintiff] must or shall be paid by Greython." We agree.

We decline the plaintiff's invitation to find ambiguity in the payment provision in article 6 when we see none. Rather, we rely on the plain language of the contract, which has just one possible reasonable interpretation. To reiterate, the relevant payment provision in article 6 of the contract states: "[The plaintiff] expressly agrees that payment by [50 Morgan] to [Greython] is a *condition precedent* to [Greython's] obligation to make partial or final payments to [the plaintiff] . . . ." (Emphasis added.) It is well settled that "[a] condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the [nonfulfillment] of which excuses performance depends [on] the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Lorson*, 341 Conn. 430, 440, 267 A.3d 1 (2021).

The plaintiff has not cited any appellate case holding that the term "condition precedent" has a special, understood meaning in the construction industry, nor has the plaintiff pointed to any industry custom in which these types of contractual provisions are acknowledged to require a general contractor to pay its subcontractors within a reasonable time even if the general contractor

never receives payment from the owner. We decline to read into the contract a "reasonable time" provision. Instead, we are duty bound to rely on the plain language of the contract, which makes clear that 50 Morgan must pay Greython in order to trigger Greython's duty to pay the plaintiff.

"There is a strong public policy in Connecticut favoring freedom of contract . . . . This freedom includes the right to contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract. Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability. . . . If a contract violates public policy, this would be a ground to not enforce the contract. . . . *A contract . . . however, does not violate public policy just because the contract was made unwisely. . . . [C]ourts do not unmake bargains unwisely made.* Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . *Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts.*" (Emphasis added; internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 392–93, 142 A.3d 227 (2016).

In any construction project, there is a risk that an owner will become insolvent and therefore be unable to pay its general contractor. The plaintiff in the present case is a sophisticated construction company.[10] It could have added language to the contract specifying that Greython's duty to pay would be postponed *only temporarily* if Greython did not receive payment from 50 Morgan. Instead, the plaintiff now asks this court to write such clarifying language into the contract. We are not inclined to make a new and different agreement by adding terms to which the plaintiff and Greython did not agree. Furthermore, as the court noted in its memorandum of decision, our conclusion "[does not] change the [plaintiff's] right to be paid any time Greython gets paid in the future. It just means that not having been paid by [50 Morgan], Greython's failure to pay the [plaintiff] now [does not] breach the express contract language."

We are not being asked whether the contractual language, in hindsight, appears to us to be fair or reasonable. We are simply being asked to determine if the language means what it says. We conclude that the

plain language of article 6 of the contract is clear and unambiguous that Greython is not obligated to pay the plaintiff until it receives payment from 50 Morgan. Accordingly, we also conclude that the court properly granted Greython's motion for summary judgment as to the plaintiff's breach of contract claim.[11]

## II

The plaintiff next claims that the court erred in granting Greython's motion for summary judgment because Greython failed to present any evidence demonstrating the absence of a genuine issue of material fact either that it was not the cause of 50 Morgan's failure to make payment or that it had made a substantive effort to collect payment. We will address this argument as it relates to the plaintiff's breach of the implied covenant of good faith and fair dealing claim against Greython.[12] We conclude that the court did not err in granting Greython's motion for summary judgment as to this claim.[13]

"[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 240, 915 A.2d 290 (2007).

"Bad faith in general implies . . . actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, supra, 322 Conn. 399–400. "The standard of proof applicable to claims of bad faith is clear and convincing evidence." *M.J. Daly & Sons, Inc.* v. *West Haven*, 66 Conn. App. 41, 53, 783 A.2d 1138, cert. denied, 258 Conn. 944, 786 A.2d 430 (2001).

The following additional procedural history is relevant to this claim. In the operative complaint, the plaintiff stated that the contract "contains an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other

to receive the benefits of the agreement." The plaintiff alleged that Greython breached its duty of good faith and fair dealing by (1) "failing to make payment of the sums due to [the plaintiff] that are not subject to a good faith dispute," and (2) "failing to provide notice or response to [the plaintiff] in good faith as to the specific, justifiable reasons for Greython's failure to make payment to [the plaintiff]." The plaintiff further alleged: "These acts and omissions by Greython were undertaken in bad faith, solely for the purpose of avoiding Greython's express and implied obligations under the parties' contract." We reasonably interpret the plaintiff's claim before this court as arguing that Greython breached the implied covenant of good faith and fair dealing by not making a "substantive effort" to collect payment from 50 Morgan, thereby injuring the plaintiff's right to receive the benefits of its agreement with Greython.[14]

Viewing the record in the light most favorable to the plaintiff as the nonmoving party, there is no evidence, let alone evidence sufficient to create a genuine issue of material fact, that Greython acted in bad faith when attempting to collect payment from 50 Morgan. Our independent review of the evidence that was before the court when it rendered its summary judgment does not reveal a potential sinister motive or dishonest purpose on the part of Greython.[15]

The plaintiff did not allege or provide evidence that Greython acted with a dishonest purpose in unsuccessfully attempting to collect payment from 50 Morgan. Accordingly, we conclude that the court properly decided that there was no genuine issue of material fact that Greython did not act in bad faith when it did not pay the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The amended complaint, which serves as the operative complaint, lists sixteen defendants, including Greython and 50 Morgan. Greython is the only defendant participating in the present appeal. For purposes of clarity, we will refer in this opinion to Greython and 50 Morgan by name.

[2] The first count of the operative complaint was brought against all of the defendants, including Greython, to foreclose on a mechanic's lien that the plaintiff filed on the land records for the city of Hartford. On October 24, 2019, the plaintiff withdrew that count.

[3] Counts five, seven, and eight of the operative complaint were directed against 50 Morgan, which is not a party to this appeal.

[4] See, e.g., *DeCarlo & Doll, Inc.* v. *Dilozir*, 45 Conn. App. 633, 641 n.4, 698 A.2d 318 (1997) (comparing contract provision to "pay-when-paid" clause, which had been held by Massachusetts Supreme Judicial Court to merely postpone general contractor's obligation to pay subcontractors for reasonable time); *Titan Mechanical Contractors, Inc.* v. *Klewin Building Co.*, Superior Court, judicial district of Hartford, Docket No. CV-07-5009771 (October 30, 2007) (44 Conn. L. Rptr. 429, 429–30) (contract stated that payment from owner to general contractor was "express condition precedent to any payment by [g]eneral [c]ontractor to [s]ubcontractor," but court interpreted provision as "pay-when-paid" clause and stated that "under this interpretation payment would be required within a reasonable time even if [the general contractor was] not paid"); *R & L Acoustics* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-00-0380506-S (September 27, 2001) (even though parties expressly and unambig-

uously conditioned subcontractor's right to payment on general contractor's receipt of funds from owner, court held that general contractor's duty to pay subcontractor was only temporarily postponed for reasonable time).

[5] The court rendered summary judgment in favor of Greython as to counts two, three, four, and six. The plaintiff's appeal form states that it is appealing from the "granting of [Greython's] motion for summary judgment." In its brief to this court, the plaintiff only challenges the court's conclusions as to count two (breach of contract) and count three (breach of the implied covenant of good faith and fair dealing).

[6] At oral argument before this court, counsel for the plaintiff acknowledged that he is not aware of any appellate authority to support the plaintiff's contention that including the phrase "condition precedent" in a contract without clarifying language is not sufficient to clearly and unambiguously transfer the risk of owner nonpayment from a general contractor to its subcontractor.

[7] In advancing this argument, the plaintiff relies on *Thos. J. Dyer Co.* v. *Bishop International Engineering Co.*, 303 F.2d 655 (6th Cir. 1962), and *R & L Acoustics* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-00-0380506-S (September 27, 2001), neither of which is binding on this court.

[8] In *DeCarlo & Doll, Inc.* v. *Dilozir*, supra, 45 Conn. App. 639, the contract provided that payment from the defendant to the plaintiff was due thirty days after the defendant was billed on the first invoice. The parties then amended the contract by adding a clause that stated: " 'Subject to payment with all outstanding payments to be paid in full at time of financing of project' . . . ." Id., 637. The defendant did not receive financing and did not pay the entire bill for the services rendered by the plaintiff. Id. The plaintiff brought a breach of contract action against the defendant and "the trial court permitted the defendant to prevail on a special defense that alleged that the defendant's payment obligations under the contract were conditioned on the defendant's securing financing from a third party, which never occurred." Id., 634. On appeal, this court stated that the clause "was not a condition on which payment was contingent." Id., 641. This court held: "Viewing the contract as a whole, we conclude that the clause 'subject to payment with all outstanding payments to be paid in full at time of financing' is not a condition precedent but a date of payment set by the defendant." Id., 643. In reaching its conclusion, this court compared the clause to a "pay when paid" clause used by contractors in the construction industry. Id., 641 n.4.

Several Superior Court cases have cited *DeCarlo* when interpreting contract clauses that, like the clause in the present case, expressly and unambiguously condition an obligee's right to payment on an obligor's receipt of payment from a third party. Some of those cases refer to these types of clauses as "pay-if-paid" clauses. Our trial courts have reached different conclusions as to the interpretation of this type of clause. See, e.g., *R & L Acoustics* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-00-0380506-S (September 27, 2001) (clause not enforceable as condition precedent even though it stated "[t]he Contractor shall have no liability or responsibility for any amount due or claimed to be due to Subcontractor except to the extent Contractor actually receives funds from Owner specifically designated for disbursement to the Subcontractor as receipt of such funds from the Owner are *specifically made a condition precedent* to the Contractor's obligation to make payments to Subcontractor hereunder" (emphasis added; internal quotation marks omitted)); *Lindade Construction, Inc.* v. *Continental Casualty Co.*, Superior Court, judicial district of Waterbury, Docket No. CV-05-008767-S (February 25, 2009) (47 Conn. L. Rptr. 323) ("pay-if-paid" clause was enforceable and not void as against public policy given strong public policy in Connecticut favoring freedom of contract). In the present case, the plaintiff does not cite any Connecticut appellate cases, and we are aware of none, that address the enforceability of "pay-if-paid" clauses.

[9] At oral argument before this court, counsel for the plaintiff stated that he was "100 percent certain" that Greython drafted the contract and asserted that it is typical for a general contractor to use its own standard form contract with its subcontractors. Because we conclude that the contractual language is plain and unambiguous, we need not consider the maxim of contract construction that states that, where an ambiguity exists, contractual language is to be construed against the drafter. See, e.g., *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005).

[10] At oral argument before this court, counsel for the plaintiff agreed with this court's characterization of the plaintiff as a "sophisticated" construction company.

[11] Our conclusion as to this claim addresses the court's determination as to count two of the operative complaint. In part II of this opinion, we will address the court's determination as to count three. The plaintiff does not challenge the court's determinations as to counts four and six. See footnote 5 of this opinion.

[12] In this claim, the plaintiff challenges the court's conclusions as to the granting of Greython's motion for summary judgment regarding both the breach of contract and the breach of the implied covenant of good faith and fair dealing claims. Previously in this opinion, we have concluded that Greython is not required to pay the plaintiff until it receives payment from 50 Morgan. The plaintiff does not cite any binding appellate authority that supports its assertion that, in order for Greython to prevail on its motion for summary judgment, Greython was required to demonstrate that it either was not the cause of 50 Morgan's failure to make payment or that it made a substantive effort to collect payment. For the reasons set forth in this section of the opinion, the plaintiff's argument on this issue is more properly encompassed by its claim that Greython breached the implied covenant of good faith and fair dealing.

[13] As part of this claim, the plaintiff argues that there was no factual support for the court's conclusion that Greython provided evidence that it acted in good faith. In its memorandum of decision, the court stated: "In support of its motion, Greython asserts that it has a great deal of its own money at stake and [it] has tried diligently to collect the sums owed to it and its subcontractors." After concluding that the plaintiff did not offer evidence sufficient to create an issue of fact as to whether Greython acted in bad faith, the court stated: "The [plaintiff cannot] survive summary judgment when [it has] produced no evidence of bad faith in response to [Greython's] evidence of good faith." The plaintiff takes issue with the court's conclusion that Greython provided evidence of good faith regarding its efforts to collect from 50 Morgan. It argues that Greython "failed to present any evidence that it made any effort—beyond merely forwarding the plaintiff's payment applications to [50 Morgan]—to obtain payment from [50 Morgan] for the plaintiff's work."

Our independent review of the record before the court at the time it granted the motion for summary judgment indicates that the only evidence that Greython presented about its good faith efforts to collect payment from 50 Morgan came from a portion of the affidavit of Kyle Klewin, Greython's president, which states that Greython submitted requisitions seeking payments for the materials and services provided both by Greython and its subcontractors. At the hearing on Greython's motion for summary judgment, counsel for Greython detailed its efforts to collect payment from 50 Morgan. In its memorandum of decision, the court appeared to rely in part on those statements by counsel, which are not evidence. Accordingly, the court apparently overstated the scant evidence in the record about Greython's efforts to collect payment from 50 Morgan. As we discuss in more detail later in this opinion, however, the plaintiff did not submit evidence of bad faith on the part of Greython. Thus, there was a lack of evidence sufficient to create a genuine issue of material fact as to Greython's bad faith. In the absence of such evidence, this mischaracterization in the court's memorandum of decision does not affect the outcome of this case.

[14] For example, at oral argument before this court, when discussing the lack of evidence of bad faith submitted by the plaintiff, counsel for the plaintiff argued that Greython's "failure to take any action" against 50 Morgan was "telling." In other words, the plaintiff seemed to argue that Greython's failure to more aggressively pursue payment from 50 Morgan is evidence of bad faith.

[15] Greython attached to its memorandum in support of its motion for summary judgment the affidavit of its president, Kyle Klewin. This affidavit states that Greython submitted requisitions seeking payment for the materials and services provided both by it and its subcontractors. The plaintiff argues that Greython failed to present evidence that it made any effort to collect payment beyond merely submitting those requisitions. The affidavit of William Flynn, Jr., the plaintiff's vice president, which was attached to the plaintiff's memorandum in opposition to summary judgment, provides some insight into why Greython did not take additional steps to collect payment from 50 Morgan. Flynn's affidavit states that on July 25, 2018, "Greython advised [the plaintiff] that [50 Morgan] had obtained new funding

for the Project and that [the plaintiff] would be paid in full with proceeds from the loan closing." The affidavit further states that on August 16, 2018, and January 4, 2019, Greython contacted the plaintiff and reiterated that the loan closing was taking place and that the plaintiff would be paid in full with proceeds from the loan. E-mails supporting these statements were attached to the affidavit as exhibits. The affidavit then states that the closing never occurred.

The plaintiff did not attempt to show that Greython's statements about the closing were made in bad faith. It did not allege, for example, that those statements were false or misleading. Although the correspondences about the closing took place after the plaintiff brought its action against Greython, they nevertheless provide evidence of Greython's effort to collect payment from 50 Morgan.

———————————————————